PETERS, Plaintiff, v GOODYEAR TIRE & RUBBER COMPANY ET AL, Defendants.

Common Pleas Court, Summit County.

No. 128635.   Decided December 2nd, 1947.

66

Stanley Denlinger, Akron, for complainant.
Roy Browne & Harold Parker, Akron, for Browne & Currie.

## OPINION

By EMMONS, J.

This action was instituted by Attorney Stanley Denlinger by a motion for order to show cause why John D. Currie and Attorney Roy Browne should not be punished for contempt, and at the conclusion of the complainant's case a motion was made by Browne and Currie to dismiss their cases which were heard jointly, and upon which motion the Court reserved its decision, and the said Browne and Currie rested their case without the introduction of further testimony.

On October 9, 1947, the plaintiff served notices upon counsel for the defendants in the case of Robert Peters v The Goodyear Tire & Rubber Company et al, being case No. 128635 in the Common Pleas Court of Summit County, Ohio, notifying them that on October 14, 1947, at 9:30 A. M. depositions would be taken at 525 Ohio Building, Akron, Ohio, which place was the law offices of Denlinger.

These notices were acknowledged by counsel for the three defendants and no question was raised by said counsel as to the time and place of taking the depositions or as to the official character of the Notary Public before whom the depositions were to be taken. The Notary served a subpoena duces tecum upon one of the witnesses, Currie, who was Director of Finance of the City of Akron, Ohio, who admittedly received the subpoena which directed him to bring certain books and records, under his charge and control as said Finance Director, pertaining to purchases of tear gas in the year of 1938, the said year being the time alleged in the petition.

In compliance with the subpoena Currie appeared at the office of Denlinger with Attorney Roy Browne, the Law Director of the City of Akron, Ohio, who came at the request of Currie and also as the legal adviser of Currie as Finance Director in his official capacity.

Denlinger refused to allow Brown in the office at the time Currie's deposition was to be taken, and Browne advised Currie not to testify without his counsel being present. Before the Notary Public opened up the hearing, before she asked Currie to be sworn or to testify, or even before she ordered Currie to stay in order to receive his testimony, Currie, upon the advice of Browne, absented himself from the office of Denlinger.

Denlinger then prepared a contempt charge against both Browne and Currié, who at the time of the hearing pleaded not guilty.

The significant part of the sworn testimony of Dorothy Gaylord, the Notary Public, given at this contempt hearing is as follows:

"Q. Do you recall anything that Mr. Currie said at that meeting at the office? A. When I was present Mr. Currie didn't say anything in my presence. I am very sorry but I didn't hear Mr. Currie say anything when I was there.

"Q. Now, will you tell the Court whether at any time while Mr. Currie and Mr. Browne and Mr. Parker were in there that you ever opened your book or started these proceedings? A. I didn't start the deposition, no.

"Q. Did you ever start this deposition while Mr. Browne, Mr. Parker and Mr. Currie were there? A. We didn't start the deposition while you were present.

"Q. Do you remember if Mr. Denlinger and I were discussing about the right of me being there and Mr. Denlinger said, 'We are going to go up to the Presiding Judge and find out.' And I said to Mr. Denlinger, 'All right. Let's go up now.' A. I recall the conversation.

"Q. Then do you remember of me going to you, Dorothy, and saying, 'Dorothy, I want all this taken down.' And Mr. Denlinger says, 'You aren't taking down anything, Dorothy,' or words to that effect? A. Well, I recall some conversation to that effect, I don't recall the exact words. There was no deposition at the time.

"Q. Dorothy, you didn't ask anyone to be sworn, did you? A. Not in your presence."

And then the Court asked her the following questions:

"THE COURT: Did you ask Mr. Currie to be sworn at all during that time?
"THE WITNESS: Not while—
"THE COURT: At any time?
"THE WITNESS: At no time did I ask it.
"Q. You are a notary, you were the one in charge of this deposition, were you not? A. That's right.
"Q. Did you yourself ever ask Mr. Currie to testify even without counsel—tell him, 'I want you here to testify even without counsel'? A. No, I didn't say anything to Mr. Currie.
"Q. Did you say anything to me about wanting Mr. Currie to testify without me? A. I didn't say anything to him.
"Q. The fact is you didn't do hardly any talking at all there, did you? A. No, I didn't.
"Q. Didn't I state to you that we were here with the

records and that we would be willing to go ahead with them if I could be present, or words to that effect? A. You made statements something to that effect. I don't recall your exact language, but you weren't going to proceed without your presence."

Mr. Denlinger then put on Mr. Currie as his witness. Mr. Currie testified as follows:

"Q. Did Mr. Browne and Mr. Parker come over with you from the City Hall? A. They did, at my request.

"Q. When did you request them to come? A. When I received the subpoena. I don't recall the exact day, but I received the subpoena and read what the subpoena asked for, and I saw it was in connection with City business, and the Department of Law is the counsel for the officers of the City and for my office, and I asked the Law Director to serve as counsel in connection with this hearing inasmuch as it affected City business.

"Q. Do you recall Mr. Wise saying, when we were discussing about the right of counsel to be there for a witness, that 'There are still some rights under the constitution' or words to that effect? A. I recall some similar conversation coming from Mr. Wise.

"Q. Do you remember of me saying to Mr. Denlinger, 'Let's go up now to the Presiding Judge and let him determine whether you should testify'? A. I recall your saying that. I don't recall whether you said it to Denlinger or not.

"Q. Now, Mr. Currie, Mr. Stanley Denlinger swore under oath before Robert Robinson, Notary Public, as follows: 'That whereupon affiant advised witness Currie that he was there under subpoena and the Notary asked him if he refused to be sworn and testify ——' Will you tell the Court whether or not the Notary asked you to be sworn or testify? A. The Notary didn't ask me to be sworn or testify.

"Q. Then you would say that Mr. Stanley Denlinger's statement here under oath is not true? A. As far as that part is concerned it is not true.

"Q. Did Mr. Denlinger say in your presence that Mr. Parker and I—meaning Roy Browne—were trespassers and that they should get out of here while they can leave peacefully? A. I recall him saying words to that effect.

"Q. And it was after we had the legal discussion on the question of law as to the right of a witness to have counsel? A. It was in connection with that conversation."

Then Mr. Denlinger put on Mr. Thomas F. Lynett, another of his witnesses, and Mr. Lynett was asked the following questions on cross examination by Mr. Browne, and gave the following answers:

"Q. Now, remember Mr. Wise stating when we were discussing about the right of an attorney to be there, 'We still have some rights under the constitution'? A. Yes, sir.

"Q. Do you remember of Mr. Denlinger saying to the stenographer—when I asked her to take this down—'You are not to take anything down, Dorothy, until these trespassers get out of this office'? A. I believe there was something like that said.

"Q. Do you remember of me offering to go up to the Presiding Judge and have this determined? A. Yes, sir.

"Q. And Mr. Denlinger said he wasn't going to go up? A. Yes, sir.

"Q. Now, Dorothy Gaylord didn't ask anybody to be sworn, did she, while I was there? A. No, sir.

"Q. She didn't ask John Currie to be sworn? A. No, sir.

"Q. She didn't request John Currie to stay there and take testimony? A. No, sir.

"Q. In fact, she didn't open her mouth hardly while we were there, did she? A. I don't recall of her saying anything."

The four questions that the Court must answer before these contempt charges can be decided are:

1. Must the notary public, before whom the contempt is alleged to have happened, bring the contempt action?

2. Is a witness at a deposition hearing before a notary public entitled to have his attorney present during the proceedings to represent him?

3. Is a person in contempt, who appears as a witness in response to a subpoena duces tecum, to give testimony at a deposition hearing before a notary public, and who, upon advice of his counsel, absents himself before he can testify for the reason that the attorney ordering the depositions refuses to allow the witness's attorney to be present at the hearing to represent him?

4. Is an attorney guilty of contempt who, upon being advised by the attorney ordering the deposition that he cannot be present to represent his client while his client is testifying as a witness in a deposition hearing before a notary public, orders his client to absent himself from the hearing without testifying?

A contempt is a disregard of or obedience to the commands of a public authority, legislative or judicial, or an interruption of its proceedings by disorderly conduct or insolent language in the presence of or so near thereto as to disturb the proceedings or impair the respect due the authority.

A contempt action being one of a quasi criminal nature, the accused cannot be called for cross examination without his consent, and the accused is entitled to the presumption of innocence, and that presumption of innocence must remain throughout the entire trial, or until such time, if at all, as this presumption is overcome by evidence which convinces the deciding body of the guilt of the accused beyond the existence of a reasonable doubt.

Law Director Browne maintains that Attorney Denlinger had no right to bring this contempt action, claiming it should have been brought by the Notary Public, but with this view the Court is not in accord.

33 O. C. C. 161.

As a general rule proceedings for contempt to enforce a civil remedy and to protect the rights of the party litigants should be instituted by the aggrieved parties or those who succeed to their rights or some one who has a pecuniary interest in the right to be protected.

Assuming that a person who is subpoenaed did not appear to testify, or if he did appear, refused to testify, the interested parties would be those who have a pecuniary interest in the lawsuit and who perhaps might lose the whole or part of that interest because of the witness' contempt, and while the officer before whom the contempt was committed may prefer contempt charges, the action is usually brought by the party who would stand to lose if the witness' testimony were not made available. The Court therefore finds that Denlinger did have the right to bring this action against both Browne and Currie.

The second question for the Court's determination is whether a witness at a deposition hearing before a notary public is entitled to have his attorney present during the proceedings to represent him.

In re Martin, Jr., 141 Oh St 87 which overrules In re Martin, Jr., 189 Oh St 609.

The fourth syllabus of this case is as follows:

"A witness who is not a party has no legal right upon the taking of his deposition to refuse to answer any question upon the advice of his attorney merely because the attorney believes

that the testimony sought is irrelevant, incompetent or immaterial."

The fifth syllabus is as follows:

"A commissioner not being invested with the ultimate authority to pass on the relevancy, competency or materiality of testimony taken upon deposition, should order the witness to answer any question where the objection is based upon those grounds subject only to the exclusion of the testimony by the Court when offered upon the trial."

Quoting the seventh syllabus:

"A witness whose testimony is being taken by deposition for use in another state may refuse to answer any question, the answer to which would infringe any personal privilege granted by the constitution or statutes of this state or any rule of common law recognized by this state, and if committed for contempt for such refusal has the lawful right to have the question of privilege determined by the Ohio courts in a subsequent habeas corpus proceeding."

Attorney Denlinger insists that a witness to a proceeding has no legal right to be represented by counsel in a deposition hearing or trial of the cause.

According to the last pronouncement of our Supreme Court, 141 Oh St 87 (supra) the materiality, competency or relevancy of a question cannot be tested and determined by the notary public upon objection but the question must be answered, and the answers are subject only to the exclusion by the Court when offered upon the trial thereof, but not so with questions pertaining to privilege, or questions, the answers to which would incriminate the witness, for these can be objected to and they do not have to be answered.

Assuming that the law is that witnesses in a case are denied the right of counsel, what would they know, generally speaking, as to whether their questions called for answers that were privileged or called for those that would incriminate them. These privileges can be waived by not objecting to the questions, and if these witnesses were not entitled to counsel to protect their interests they would be at the mercy of the attorneys representing the parties at the deposition hearing.

To say that one cannot have counsel to protect that one's rights as given him by constitution and law is comparable to denying one the rights that he has under the constitution and law.

Constitutional or legal privileges given to the people of a sovereign state are such as bestow upon those people the inherent or implied right to employ such legal representation as assures them the preservation of those privileges.

A witness testifying at any judicial or administrative hearing certainly comes within the purview of that statement of the law, and is therefore entitled to have his attorney present to represent him and protect his rights as are afforded to him by the constitution and law.

In his brief Attorney Denlinger says: "There is no question but what counsel for the defendants, who were present at the hearing, were excellent lawyers who were capable and whose reputation distinctly shows their ability to protect a witness called by either of the parties to the litigation."

The Court harbors no doubt as to the ability or integrity of counsel who represented both plaintiff and defendant, but in calling Currie, Denlinger made him his own witness, and thus he would be subjected to cross examination by those whom Denlinger says would protect him. An attorney can be honest and possess ability, but still in the representation of his client he has no duty to protect the rights of the witnesses. And the Court is also at a loss to understand why Denlinger would give over the protection of this witness to the attorneys for the defendants when Currie was, in fact, his own witness.

The statement made by Denlinger in his brief is not justified from the experience of this Court after some seventeen years on the bench.

Denlinger also sets out in his brief that "there is no question of privileged communication or asking of questions degrading the witness or questions which tend to incriminate."

That may be so, but Currie has not testified yet and no one—not even the examining counsel—knows where the examination will lead or where it will stop. Further, the Court is not deciding the question of representation by counsel only in so far as this action alone is concerned, but rather is it the determination of the law which should govern in all cases.

The interest of the general public is not as great in civil matters as in criminal matters, and so for the protection of those accused of crime the Ohio constitution allows the accused the right to appear and defend in person or with counsel, while the statute further supplements the constitutional right

by giving the accused the right, if he is without and unable to employ counsel, to have the Court assign him counsel.

In 100 U. S. 195 the Court said:

"Persons acting professionally in legal formalities, nego-· tiations or proceedings by the warrant or authority of their clients may be regarded as attorneys at law within the meaning of that designation as used in this country."

It will be noted that the word "client" appears without qualification in this definition, and as long as one of the legal profession, licensed to practice, has a warrant or the authority from his client to represent him, the attorney is entitled to so act.

Surely there is no question but that the law allows persons to prosecute and defend in person or by counsel, and while it is seldom that witnesses have attorneys to represent them, that custom does not, however, deny them the right of representation by counsel.

Our freedom is, as it were, a sick patient, and it is for the representatives of law and order to assist in administering antidotes in an attempt to alleviate the poisonous state that exists, rather than by prohibition to create a more severe condition.

The charter of the City of Akron provides as follows:

Section 62. "Director of Law. The Director of Law shall be an attorney at law admitted to practice in the State of Ohio He shall be the legal advisor of and attorney and counsel for' the City and for all officers and departments thereof in matters relating to their official duties."

Under the charter Browne, as Director of Law, was the attorney, counsel and legal advisor of Currie, as Finance Director of the City of Akron. Currie was subpoenaed in his official capacity to bring in the records of the City, and upon being subpoenaed Currie asked Browne to represent him. Browne therefore had the right to represent Currie, and having this right he also was privileged to remain in the room wherein the deposition proceedings were being had, to represent and protect his client.

The Court will consider the last two questions together, which questions are as follows:

Is a person in contempt, who appears as a witness in response to a subpoena duces tecum to give testimony at a deposition before a notary public, and who upon advise of his

counsel absents himself before he can testify for the reason that the attorney ordering the deposition refuses to allow the witness' attorney to be present at the hearing to represent him?

Is an attorney guilty of contempt who, upon being advised by the attorney ordering the deposition that he cannot be present to represent his client while his client is testifying as a witness in a deposition hearing before a notary public, orders his client to absent himself from the hearing without testifying?

The mere fact that Browne advised Currie to leave before his testimony could be secured is no defense to Currie's case, but it can only be considered in mitigation, however, that rule of law is true only if Browne had no legal excuse for this advice to his client.

In this state a notary public has no inherent power to preside at the taking of depositions nor to punish for contempt. The authority to do this must be set out in the statutes. In other words, the power of a notary to punish for a contempt is statutory and not inherent.

Sec. 11510 GC, provides:

"Disobedience of a subpoena, a refusal to be sworn except upon failure to pay fees duly demanded, and an unlawful refusal to answer as a witness or to subscribe a deposition may be punished as a contempt of the court or officer by whom the attendance or testimony of the witness is required."

Contempts are either direct, such as are offered to the Court while sitting as such and in its presence, or constructive in tending to obstruct, embarrass or prevent the due administration of justice.

Currie did not refuse to be sworn, nor did he refuse to answer as a witness, neither did he refuse to subscribe the deposition, and he did appear in response to a subpoena, but he left without testifying. Under the usual circumstances a person who appears in response to a subpoena and leaves without permission from the notary and before testifying, is said to be guilty of a constructive contempt by obstructing the due administration of justice. However, in this instance Currie claimed a certain right which Denlinger would not allow him to maintain, and without permission to assert this right Currie left upon advice of his counsel.

Contempt is the product of intention which, if not expressed, can be elicited and proven by the actions or conduct

of the parties. Good faith evidenced in the performance of an act goes to the determination of intention.

What was the conduct of Browne and Currie and what were the attending circumstances?

Browne appeared in the office of Denlinger and told him that he, as Law Director, represented Currie, who had been subpoenaed in his capacity as Finance Director, and that he wanted to remain with Currie throughout the taking of his deposition. Denlinger refused Browne this right and accused him of being a trespasser and told him that he should leave while he could leave peaceably, and that Currie as a witness had no right to insist on counsel. Browne then asked Denlinger to go before the Presiding Judge of the Common Pleas Court of Summit County, Ohio, for instructions or a ruling as to Browne's right, which request Denlinger denied. Then Browne asked the Notary Public to open the deposition hearing and take down what he, Denlinger and the others were saying for the record, at which suggestion Denlinger told the Notary "that she was taking nothing down."

What more could Browne have done?

Should he, without the order of the Notary Public, have permitted Currie, his client, to stay without benefit of counsel, or should he have tried to prevail upon Denlinger physically or by counter threats to stay and represent Currie, and was he justified in counseling his client to leave with him?

5 C. C. N. S. 621:

"Where one in good faith is pursuing in an orderly way and inoffensive manner what he supposes to be his rights in a court of justice, he is not guilty of contempt if he falls in error and violates either a rule of court or a non-penal statute."

A deposition hearing is an orderly proceeding under the supervision and control of a notary public.

If Denlinger believed that Browne did not have the right to represent a witness at a deposition hearing, the orderly and proper proceeding would have been to have made a motion to the notary for the exclusion of Browne, or to have gone with Browne to the Presiding Judge of the Court of Common Pleas to have his right fixed. However, it impresses the Court that Denlinger usurped the powers and prerogative of the Notary Public and took charge and control of the proceedings.

It would seem that Denlinger, in his zeal to represent his client, forgot that his office, in naming it as a place in which depositions were to be taken, lost its original identity and was,

at the time complained of, the place over which the Notary Public presided. The conduct and demeanor of counsel and witnesses should have been the same as that maintained in a regular courtroom, and for this the Notary Public was responsible because of her statutory powers to punish for contempt.

Browne knew he could not stay to represent his client without having trouble with Denlinger, and knowing of the duty he owed his client he appealed to Denlinger to let the presiding Judge of the Common Pleas Court decide his rights; he asked the Notary Public to take down statements then and there being made for the purposes of the record, which request Denlinger would not grant or allow; and rightfully determining his client was entitled to the benefit of counsel Browne asked Currie to absent himself from the proceedings, which was done.

What other method could Browne have pursued unless he wanted to start an altercation? His conduct, as well as Currie's, was not an effrontery to the Notary Public but was instead one of respect, for by Browne's actions he created an atmosphere of peace and harmony.

In summation the Court finds:

1. That Attorney Denlinger had the right to bring this action.

2. That Currie, as a witness, was entitled to be represented by counsel at the deposition proceedings.

3. That Currie in following the advice of his counsel in absenting himself from the proceedings acted in good faith and without contempt.

4. That Attorney Browne, representing his client Currie, also acted lawfully and without contempt.

The Court therefore finds that neither Currie nor his attorney, Browne, is guilty of contempt of Court and that their motion to dismiss the proceedings is well taken and should be sustained.

Journal entry to be prepared to conform to the Court's finding, saving exceptions to Attorney Stanley Denlinger.