**Robert G. PAGE and
Penelope O. PAGE, Plaintiffs**

v.

**Charles E. FRAZIER, Jr. and
THE CAPE COD FIVE CENTS
SAVINGS BANK, Defendants**

No. 37910

Superior Court
Commonwealth of Massachusetts

**August 4, 1981**

884

Peter M. Lauriat, counsel for plaintiff
H. Sarkis Terkanian, counsel for defendant
Richard J. Cain, counsel for defendant
Erik Lund, counsel for defendant
Robert T. Harrington, counsel for defendant
David J. Hatem, counsel for defendant

## FINDINGS OF FACT, RULINGS OF LAW and ORDER FOR JUDGEMENT
### Nature of the Case

The plaintiffs' complaint alleges causes of action for professional negligence, breach of warranty and for unfair and deceptive practices pursuant to Chapter 93A against the defendant, Frazier, on the basis of his title examination of the plaintiffs' property and against the defendant, bank, which granted the plaintiffs a mortgage on said property.

## FINDINGS OF FACT

Based on all of the evidence, both testimonial and documentary, and the reasonable inferences drawn therefrom, the material facts are found as follows:

1. The plaintiffs, Robert G. Page and Penelope O. Page, are husband and wife, and maintain this action as plaintiffs due to the fact that the subject property was taken in their names as husband and wife as tenants by the entirety. However, all relevant evidence was submitted by Robert G. Page, singularly. Therefore, I shall refer to the plaintiff in the singular throughout these "Findings" or as "Page". Mr. Page is not an attorney nor is he particularly conversant with the intricate elements or ramifications of title examinations. However, Robert Page is a high-level executive possessing concomitant intelligence, ability and knowledge of business transactions. The plaintiff, Page, has both purchased and sold real property for his personal use on a number of occasions prior to the transaction in issue.

2. The defendant, Charles E. Frazier, Jr., (hereinafter referred to as Frazier), has been licensed to practice law and a member of the Massachusetts Bar since 1935. For the majority of his years as a member of the Bar, the defendant has practiced law in the community of Wellfleet, Massachusetts. By experience, the defendant is a qualified expert in the field of conveyancing and title examination.

3. The defendant, Cape Cod Five Cents Savings Bank, (hereinafter referred to as Bank), is a duly established Massachusetts banking corporation having its principal place of business in Harwich Port, Massachusetts.

4. In 1964, the plaintiffs purchased a home off Hamblin Farm Road in Wellfleet, Massachusetts. From 1967 through 1972, the plaintiff, Page, sought to determine the ownership of an adjacent parcel of 1.1±acres. The plaintiff was interested in the parcel for protection and privacy with the ancillary factor of investment. The records of the town assessor did not reflect the ownership, but after some surface tracing, it was suggested to the plaintiff that the land was owned by Lorenzo Dow Baker, or the heirs of same. The land ownership of the Baker family had been extensive throughout Wellfleet with numerous conveyances over the years.

5. In November of 1972, Page contacted the heirs of Lorenzo Dow Baker and entered into an agreement to purchase the parcel of land adjoining his home for $14,500. (Exhibit No. 21).

6. Page filled out an application for a mortgage with the Cape Cod Five Cents Savings Bank (Exhibit No. 1) on November 21, 1972. The said application contained the statutory wording at the bottom that:

"(1) The responsibility of the

attorney for the mortgagee is to protect the interest of the mortgagee notwithstanding the fact that (a) the mortgagor shall be obligated to pay the legal fees of said attorney, and (b) the mortgagor is billed for such legal services by the mortgagee.

(2) The mortgagor may, at his own expense, engage an attorney of his own selection to represent his own interests in the transaction."

7. On the mortgage application, Page stated that his salary was in excess of $5,000 per month. The Bank approved the mortgage application on the following day, November 22, 1972. It is a reasonable inference that the Bank had no problem with the credit rating or financial standing of the plaintiff in its assessment of his ability to repay the $8,700 mortgage loan at the rate of $108 per month based upon the 24-hour acceptance of the application.

8. The Bank selected Frazier to represent the Bank and to check the title to the property. (Exhibit No. 2). The defendant, Frazier, was known to Page as the plaintiff had retained Frazier in 1967 to review his will and had made inquiry of Frazier from time to time relative to possible real estate sites in Wellfleet. In purchasing property in Wellfleet prior to 1972, Page had used another attorney.

9. The disclosure statement signed by the plaintiff indicated that Page would be responsible for the Bank attorney's charge of $125 for recording and title certification. (Exhibit No. 4). As subsequent events transpired, the plaintiff was never billed for the $125 by either the Bank or Frazier and Frazier was not paid for his services.

10. During the pertinent time period of this action, Frazier was a Vice-President and trustee of the defendant Bank. However, whatever functions he performed in these respective roles are not germane to this case. He was retained by the Bank as an attorney to certify the title and draft the necessary instruments. In his role as an attorney for the Bank in the transaction of the Page mortgage and title examination, Frazier was an independent contractor. Despite his titular functions with the Bank, Frazier was not an employee, agent or servant of the defendant, Bank, for the purposes of this action.

11. The sellers of the property were represented by Attorney Edmund F. Kneeland of Newton, Massachusetts. At the request of William Hokkanen, a Vice-president of the Bank, Attorney Kneeland forwarded a letter on December 8, 1972 (Exhibit No. 26) submitting a general list of title references to deeds, probate decrees and wills to be of assistance to the Bank's attorney.

12. Page decided not to hire an attorney to represent him in this transaction as evidenced in a letter to Frazier (Exhibit No. 3) wherein he requests Frazier to properly record the deed for him, as he would not be represented by an attorney. The plaintiff decided that the conveyance was a simple matter as it involved vacant land and he did not want to pay twice for what he believed would be duplicate effort.

13. Attorney Kneeland forwarded a copy of the proposed deed in February of 1973. The proposed deed carried no title references. The executed deed was in the same form and when recorded, the title references on the deed were the same form as in the letter from Kneeland to Hokkanen. (Exhibit 5) and (Exhibit 26). That portion of Kneeland's letter had been photocopied and appended to the deed either by Frazier or by some person at Frazier's direction. The book and page number of title reference as appended to the deed given to Page did not convey the locus. The defective title reference would not affect the record title but the action of Frazier in appending said reference goes to the weight of Frazier's performance as a professional conveyance in assessing negligence.

14. In his examination of the subject locus, Frazier relied upon five survey plans of abutting owners. Said plans had been prepared by three different sur-

veyors and all plans indicated that the subject locus was in the name of L. D. Baker or Thomas Stone. A survey plan (Exhibit No. 30) prepared by Arthur L. Sparrow in June of 1926 of land to the south of the locus was an unrecorded plan. Frazier checked with the son of Arthur L. Sparrow relative to the records of his deceased father and obtained a reference to a deed from the guardian of Thomas Stone to Lorenzo D. Baker dated January 10, 1900 and recorded in Book 241, Page 473 (Exhibit No. 17). Frazier assumed the aforesaid deed described the subject locus as owned by Baker in 1926 when Sparrow prepared his survey plan (Exhibit No. 30). Frazier did not check the chain of title from 1900 through 1926. The record title in the Registry of Deeds reflects that the property described in Book 241, Page 473 was conveyed out by Baker in 1909 and said conveyance is recorded in Book 298, Page 126 (Exhibit 40). Baker or his heirs did not own this property in 1973 and the property described in that deed is located on Bank Street in Wellfleet and it is not the subject locus.

15. In January of 1973, a surveyor, Arnold Carey, prepared a plan of the locus for the sellers, the heirs of L. D. Baker. The locus in said plan was described as parcel No. 5 in a deed from Lorenzo D. Baker to Ethel C. Baker dated February 2, 1932 and recorded in Book 487, Page 167. (Exhibit No. 47). Evidence produced at trial resulted in a stipulation by the parties that the locus was not within parcel No. 5. Carey's plan was available to Frazier at the time of his title examination.

16. Numerous other references and descriptions of Baker-held land were available in Registry of Deeds when Frazier conducted his title examination but the same were not checked by Frazier to determine whether the subject locus was contained within these record titles.

17. On April 17, 1973, Frazier recorded a deed from the heirs of Baker to Page. Page had duly executed and delivered a mortgage deed, note, disclosure statement and check in the amount of $4,350 for the balance due to Frazier for the closing. Upon requesting the $8,700 check for the mortgage amount to be sent to the sellers, Frazier asked the Bank that it be made out to him as "Attorney for the Pages". (Exhibit No. 8). Within the same communication by letters to the Bank, Frazier certified that he had examined the record title to the subject locus and stated that "Title at the time of said recording was free and clear of any and all encumbrances of record".

18. It was the practice of the Bank in 1973 to require that attorneys representing the Bank's mortgage transactions were to certify a good, clear, marketable title. The Bank assumed that Frazier's certification indicated same. The Bank sent Page a copy of the letter it received from Frazier.

19. In July of 1974, Page executed a "Right of First Refusal" giving Mr. and Mrs. Stanford Ross a thirty-year right of first refusal on the subject locus. In December of 1975, Page entered into a Purchase and Sales Agreement with the Rosses (Exhibit No. 18) for the conveyance of the subject locus in the amount of $20,000. The conveyance was subject to a good and clear record and marketable title property free from all encumbrances. The attorney for the Rosses, Steven Kaye, reported to the prospective purchasers in February of 1976 that he was unable to find a good and clear record and marketable title. The Rosses declined to purchase the property from Page.

20. Page notified Frazier in March of 1976 of the title problems found by Attorney Kay. Frazier attempted to obtain a release of the right of first refusal from the Rosses and the same was denied.

21. On October 12, 1977, Page sent a demand letter to Frazier pursuant to G.L. c. 93A, sec. 1. (Exhibit 14). No response was received. Page sent a demand letter to the Bank on the same date and received a reply on November 9, 1977 from Attorney Ralph B. Snow stating that "Mr. Frazier feels that this is indeed a clear and marketable title and has promised to

furnish us with a copy of his title abstract". Frazier had never prepared a title abstract for the property and denies that he promised to furnish the Bank with the same.

22. The Bank retained Attorney Alan Hunt to examine the record title of the deed reference of Book 378, Page 179 and Atty. Hunt was unable to find a chain to title to Page from said reference and determined that the deed referred to did not convey the locus.

23. The title researcher retained by counsel for the plaintiff found that the title reference on the deed, as did Atty. Hunt, did not convey the locus nor did the reference of Book 241, Page 473, upon which Frazier maintained that he relied, convey the locus as a matter of record.

24. The Bank had no knowledge of the title problems with the subject locus until August of 1976 and following the demand letter, the Bank sought to have Frazier clarify the matter.

25. Page did not seek to place the property on the market for sale after the refusal by the Rosses. However, with the knowledge of the title problem encountered by the Rosses, Page may have been in the position of a duty to disclose to other prospective purchasers the possibility of title problems within his knowledge or risk the possibility of suit for failure to do so. Therefore, Page cannot be faulted for acting as a prudent seller in seeking to clarify or ascertain the clear, marketable title before placing the property again on the market.

26. I further find that based on the title references on the deed and those references relied upon by Frazier, no record title has been established in the plaintiff, Page. In the same respect, no good, clear, marketable title can be ascertained to be in the plaintiff, Page, based upon the examination of title performed by Frazier. Not having established a record title for the locus to Page, Frazier's statement to the Bank that the title at the time of recording was free and clear of all encumbrances cannot withstand the challenge to that statement by a fair preponderance of the credible evidence presented by the plaintiff.

27. I further find that there was no express or implied warranty on the part of the Bank to Page relative to the title to the locus, a vacant parcel of land that did not contain a dwelling of between one to four family units.

28. The plaintiff, Page, made a down payment of $5,800 for the purchase of the subject locus together with the principal and interest on the note to the Bank in the amount of $12,960. The plaintiff has paid to the Town of Wellfleet the sum of $1,265.74 in real estate taxes from the date of purchase of locus to date and remains liable to the Town for future real estate taxes. The plaintiff's mortgage payments are up to date. The plaintiff lost the sum of $5,000 in profit from the anticipated sale to the Rosses. The total damages for not having a clear, good record, and marketable title to the plaintiff are $25,525.74.

29. Despite the one statement to the Bank at the conclusion of the transaction wherein Frazier referred to himself as the "Attorney for the Pages", I find that the only express contract between the plaintiff and Frazier was relative to the recording of the deed. As Frazier was representing the bank, I find no privity of contract between Page and Frazier nor any attorney-client relationship.

30. The plaintiff has shown by a fair preponderance of the credible evidence that Frazier was negligent in his title examination of the subject locus. Nevertheless, I find no liability on the part of Frazier to the plaintiff as Frazier had no duty of a standard of care to Page. I further find that as an independent contractor retained by the Bank to represent its interests, Frazier's negligent performance cannot be imputed to the Bank.

**Special Addendum to Aforesaid Findings**

In light of the ultimate conclusions of fact and in view of the "Rulings" to follow, the recitation of aforesaid facts will appear to be far more expansive than

needed for the determination of this matter at the trial court level. For example, the findings relative to negligence, causation and damage would constitute surplusage. The "Rulings" to follow would have justified the granting of a motion for a directed verdict for both defendants on the counts of negligence and motions to dismiss on the counts under Chapter 93A and Chapter 93, Section 70. However, the matter was tried to its conclusion and all evidence was presented. In the interest of judicial economy, I have made findings on all of the elements presented in the event that a reviewing court was to find a duty of care based upon an attorney-client relationship to a non-client under a theory of reliance. In that event, the inclusion of findings on all elements should obviate the need for a retrial on these factors.

## DISCUSSION and RULINGS OF LAW

The long-standing rule in Massachusetts has been that a lawyer owes his **client** (emphasis supplied) a duty to exercise reasonable care in the handling of a case. **McLellan v. Fuller,** 226 Mass 374 (1917). The standard of reasonable care is that an attorney is "required to possess the legal knowledge and to exercise the diligence and skill in the conduct of cases usually possessed and exercised by ordinary lawyers in managing the cases entrusted to them. **Caverly v. McOwen,** 123 Mass, 574, 576 (1878).

The plaintiff, Page, believed that Frazier's role as the Bank's attorney in searching the title was representative of his interest as well. In his own words, Page stated that he did not retain a lawyer to represent him as it would be paying for duplicate effort. It is not unusual that when a bank requires the borrower to pay the attorney's fee, the borrower inevitably assumes that the attorney represents his interests as well as the bank. However, the attorney's role in representing the bank deals not only in certifying the title but in all aspects of the transaction. To this extent, the same attorney cannot also represent the borrower due to the risk of conflict of interest. See, ABA Code of

Professional Responsibility, Disciplinary Rule 5-105(B) (1971). Said rule states in part that: "A lawyer shall not continue multiple employment if the exercise of his independent professional judgment in behalf of a client will be or is likely to be adversely affected by his representation of another client . . .". It is not only in the matter of items such as prepayment rights, disclosure law, late charge provisions and special mortgage provisions where a conflict of interest could arise if the attorney represented both bank and borrower, but many experienced conveyancers would acknowledge that there is a conflict of interest even with respect to title as there are some title defects which will not make the property unsatisfactory as a security but which would concern a buyer.

The misapprehensions of borrowers relative to the role of the bank's attorney was recognized by the Legislature in its Acts of 1969, c.423, adding G.L. c. 184, sec. 17B, as amended by Acts of 1972, c. 547, sec. 2. The banks were required to print in large type on each mortgage application a warning intended to alert borrowers to the conflict.

By Chapter 547 of the Acts of 1972, the Legislature added G.L. c. 93, sec. 70, which provides that if the bank's attorney is paid by the borrower, the attorney must give the borrower a copy of the certification of title which shall be deemed to have been rendered to the borrower. However, the aforesaid provision relates only in the case of one to four-family unit properties to be occupied in whole or in part by the borrower. Section 70 of Chapter 93 does not apply to the case at hand. In addition, a clause within that statute limits the liability of the attorney's certification to the same amount of the mortage to the bank complete with declining balance over the years. Had the limiting provision not been placed within that statute, a further conflict would have arisen over the exposure of liability by the attorney to the buyer as opposed to the bank.

The plaintiff relied upon a theory that an implied attorney-client relationship

came into existence based upon the respective actions of the parties. The plaintiff further submitted that Frazier knew that the plaintiff would rely upon the examination of title and that said knowledge of reliance was sufficient to create the attorney-client relationship. As reflected in my "Findings", the plaintiff has not proven by a fair preponderance that an implied attorney-client relationship came into existence. The reliance theory has not been applied in Massachusetts to cases involving attorneys and non-clients. However, the reliance theory has been applied in **Craig v. Everett M. Brooks, Co.,** 351 Mass 497 (1967).

The traditional rule has been that since privity of contract is essential to a suit for professional negligence, there can be no liability to a third party outside the attorney-client relationship. The leading case supporting the privity rule is **Savings Bank v. Ward,** 100 U.S. 195 (1879). The historical explanation for the privity requirement was that, in the absence of a contractual relationship, there is no duty to observe a standard of care which, if breached, would provide the basis for liability in tort. See, **New England Bond & Mortgage Co. v. Brock,** 270 Mass 107 (1930). There are instances in the course of representing a client wherein an attorney's negligence injures a person other than his client. The Court has held to its justification of the privity rule on the ground that to extend liability beyond the parties to a contract would open the door to endless legal actions. **Savings Bank (supra).** The privity requirement was abandoned in the context of the professional negligence case in **Craig (supra),** where the Court held that lack of privity would not preclude an action for negligent misrepresentation brought by a general contractor against a civil engineer. The Court noted in **Craig** that the defendant knew the identity of the plaintiff and was aware that the purpose of his own work was such that it would be relied upon by the plaintiff. Therefore, the reasoning followed that the nature and the extent of damage to the plaintiff

was foreseeable by the defendant and to impose liability upon the defendant for negligence would not result in liability "in an indeterminate amount for an indeterminate time to an indeterminate class". **Craig (supra),** quoting **Ultramares Corp v. Touche,** 255 N.Y. 170, 197 (1931).

In view of the holding in **Craig (supra),** I note that the criteria set forth relative to reliance and foreseeability may provide a compromise of the bar of immunity established by lack of privity in actions for professional negligence by attorneys. Other jurisdictions have adopted a compromise formula on the issue of an attorney's liability to non-clients. See, **Lucas v. Hamm,** 56 Cal 2d 583, 364 P. 2d 685, 17 Cal. Rptr. 821 (1961) for factors to be considered on a case-by-case basis for imposition of liability despite lack of privity.

One distinguishable factor in the case at hand is not whether the plaintiff relied upon the work of the defendant, Frazier, but whether or not the plaintiff was **entitled** (emphasis supplied) to rely upon the defendant's performance in view of the strong exculpatory language in the mortgage application. Confronted with these facts, an appellate court may determine that the holding in the **Craig** case forms a basis for criteria to be set forth and applied for liability of attorneys to non-clients on a case-by-case basis. It is my belief that it is not the function of the trial court to establish new criteria for cases of professional negligence based upon one case without distinguishable factors. As the case at hand is distinguishable from **Craig** due to the warning given to prospective borrowers on mortgage applications, I decline to apply the reliance theory to the instant case.

The plaintiff sought to establish that the negligence of Frazier be imputed to the defendant, Bank, under the theory of "respondeat superior". Based upon the facts in this case, I find no application for the master-servant rule. The fact that Frazier held a position as a Vice-President and trustee of the defendant, Bank, and

owed a fiduciary duty to the Bank, its stockholders and depositors is an extraneous factor in the case before the court. These positions do not place Frazier within a respondeat superior role in this case. It is for the parties standing in the fiduciary relationship and the plaintiff has no standing to raise this cause of action. The negligence of Frazier cannot be imputed to the Bank as Frazier was an independent contractor. See, **McDermott's Case,** 283 Mass 74 (1933).

The plaintiff has charged both defendants with a violation of G.L. c. 93A for unfair or deceptive acts or practices in the conduct of any trade or commerce. With respect to the defendant, Frazier, I find no cases that are precedent in Massachusetts for the applicability of Chapter 93A actions to professional negligence or malpractice. With respect to the defendant, Bank, the cause of action in this case arose prior to the amendment of Section 9 of Chapter 93A. See, **Murphy v. Charlestown Savings Bank,** 405 NE 2d 954 (1980) where the Court held that a mortgage loan was not a purchase or lease within the provisions of Chapter 93A. The aforesaid holding would apply to the plaintiff's standing to maintain a Chapter 93A action against the Bank.

The defendant, Frazier, argued that his conduct in his examination and certification of the title to the locus was consistent with "local practice" by relying upon his own knowledge of some of the Baker lands and the location of the subject locus based upon conclusions of surveyors and their respective plans. While the Supreme Judicial Court has not dealt with the issue of the locality rule in respect to attorneys, such a rule was abandoned in measuring the conduct of physicians. It would appear that the standard of care should not be limited by geographical boundaries within the Commonwealth of Massachusetts for attorneys any more than it would be for physicians.

In addition to the other counts, the plaintiff has charged the defendant, Bank, with a violation of G.L. c. 168, sec. 34 in its acceptance of the locus as security for the first mortgage. The chapter and section cited by the plaintiff is a regulatory statute for the benefit of depositors or stockholders of a bank and does not appear to grant any new remedy for borrowers relative to title received.

* * * * *

## ORDER FOR JUDGMENT

Based on the foregoing, the Clerk's Office is to enter judgment as follows:

(1) On Count I of the plaintiff's complaint, the court finds for the defendant, Charles Frazier, Jr.

(2) On Count II of the plaintiff's complaint, the court finds for the defendant, The Cape Cod Five Cents Savings Bank.

(3) On Count III, the court finds for the defendant, The Cape Cod Five Cents Savings Bank.

(4) On Count IV of the plaintiff's complaint alleging a violation of Chapter 93A by the defendant, Charles Frazier, Jr., it is ordered that Count IV be and hereby is dismissed.

(5) On Count V of the plaintiff's complaint alleging a violation of Chapter 93A by the defendant, The Cape Cod Five Cents Savings Bank, it is ordered that Count V be and hereby is dismissed.

(6) On Count VI of the plaintiff's amended complaint alleging a violation of G.L. c. 168, sec. 34 by the defendant, The Cape Cod Five Cents Savings Bank, it is ordered that Count VI be and hereby is dismissed.

(7) On Count VII of the plaintiff's amended complaint alleging a breach of fiduciary relationship on the part of the defendant, Charles Frazier, Jr., it is ordered that Count VII be and hereby is dismissed.

**Elizabeth J. Dolan**
**Associate Justice, Superior Court**
Date: August 4, 1981

A true copy, Attest:

**Evelyn T. Arnold**
**Assistant Clerk**