## SAVINGS BANK *v.* WARD.

A., an attorney-at-law, employed and paid solely by B. to examine and report on the title of the latter to a certain lot of ground, gave over his signature this certificate, "B.'s title to the lot" (describing it) "is good, and the property is unincumbered." C., with whom A. had no contract or communication, relied upon this certificate as true, and loaned money to B., upon the latter executing by way of security therefor a deed of trust for the lot. B., before employing A., had transferred the lot in fee by a duly recorded conveyance, a fact which A., on examining the records, could have ascertained, had he ·exercised a reasonable degree of care. The money loaned was not paid, and B. is insolvent. *Held,* 1. That there being neither fraud, collusion, or falsehood by A., nor privity of contract between him and C., he is not liable to the latter for any loss sustained by reason of the certificate. 2. That usage cannot make a contract where none was made by the parties.

ERROR to the Supreme Court of the District of Columbia. The facts are stated in the opinion of the court.

*Mr. R. Ross Perry* for the plaintiff in error.

*Mr. Joseph H. Bradley* and *Mr. John J. Johnson* for. the defendant in error.

MR. JUSTICE CLIFFORD delivered the opinion of the court.

Attorneys employed by the purchasers of real property to investigate the title of the grantor prior to the purchase impliedly contract to exercise reasonable care and skill in the performance of the undertaking, and if they are negligent, or fail to exercise such reasonable care and skill in the discharge of the stipulated service, they are responsible to their employers for the loss occasioned by such neglect or want of care and skill. Addison, Contr. (6th ed.) 400.

Like care and skill are also required of attorneys when employed to investigate titles to real estate to ascertain whether it is a safe or sufficient security for a loan of money, the rule

being that if the attorney is negligent or fails to exercise reasonable care and skill in the performance of the service, and a loss results to his employers from such neglect or want of care and skill, he shall be responsible to them for the consequences of such loss. Addison, Torts (Wood's ed.), 615.

Pursuant to that rule of law the plaintiffs sued the defendant, and alleged as the cause of action that they retained and employed him to examine and ascertain the title of the possessor of certain premises situate in the city of Washington and described in the declaration, and to report to them the nature and extent of his title to the same; and they allege that he, the defendant, accepted the employment, and reported to them that the title of the possessor of the premises was good and unincumbered.

Their theory as alleged in the declaration is that they procured that report with a view to the making of a loan, and they allege that upon the faith and credit of it they loaned the sum of $3,500 to the pretended owner of the premises, and accepted as security for the same a trust-deed of the property, whereas the borrower of the money was insolvent and had no title whatever to the premises, as fully and explicitly appears by a prior deed of conveyance duly recorded.

Process was duly served, and the defendant appeared and pleaded the general issue, which was duly joined by the plaintiffs. Continuance followed, and at the opening of the next term the parties went to trial, and the verdict and judgment were in favor of the defendant. Exceptions were filed by the plaintiffs, and they sued out the present writ of error.

Six errors are assigned in this court, of which three will be separately examined. They are as follows: 1. That the court erred in ruling that some privity of contract, arising from an actual employment of the defendant by the plaintiffs, is necessary to enable the latter to maintain the action. 2. That the court erred in holding that the evidence introduced did not establish such a privity of contract between the parties as entitled the plaintiffs to recover. 3. That the court erred in instructing the jury that upon the whole evidence the verdict should be for the defendant.

Evidence was introduced by the plaintiffs tending to prove

that the defendant is an attorney-at-law doing business in the city, and that he held himself out to the public as a person skilled in the examination of titles to real estate situated in the District of Columbia. That the claimant of the lot described in the transcript employed the defendant, in his professional character, to examine his title to that lot, and to report to him the condition of the same, and that the defendant, pursuant to that employment, reported to his employer that his title to the lot is good and that the property is unincumbered, the report being signed by the defendant and his son.

It is not pretended by the plaintiffs that they ever employed the defendant to examine the title to the lot, and it appears that the report was made at the sole request of the claimant of the lot, without any knowledge on the part of the defendant as to the purpose for which it was obtained. All that is conceded by the plaintiffs ; but they gave evidence to show that the claimant of the lot presented the certificate to certain brokers, and employed them to negotiate a loan upon the property in his favor for $3,500, on the faith of that certificate. Detailed statement is given in the transcript of the steps taken by the brokers to obtain the required loan, the substance of which is that they required the party to give a negotiable note for the amount, payable in one year, with ten per cent interest, and that he and his wife should execute a trust-deed of the lot to them as trustees to secure the payment of the note when due.

Preliminaries being arranged, the brokers applied to the plaintiffs for the loan and obtained the same, giving the note and deed of trust with the certificate as security for the payment. Before accepting the papers, the plaintiffs, through their agent, required the brokers to sign the name of the borrower to the formal application for the loan, as exhibited in the transcript, and that the certificate as to the title should be continued to the date of the transaction.

Throughout, the negotiation for the loan was conducted entirely by the brokers with the plaintiffs, and it was the borrower who procured the second certificate from the defendant, the evidence showing that the defendant never came in contact either with the plaintiffs or the brokers.

Payment of the note was not made at maturity, and when it was attempted to sell the premises under the trust-deed, it was discovered that the certificates were untrue, and that the grantors, on the 13th of March previous, had conveyed the premises in fee-simple, by deed duly executed and recorded.

Attorneys-at-law are officers of the court, admitted as such by its order; but it is a mistake to suppose that they are officers of the United States, as they are neither elected nor appointed in the manner prescribed by the Constitution for the election or appointment of such officers. *Ex parte Garland*, 4 Wall. 333, 378.

When a person adopts the legal profession, and assumes to exercise its duties in behalf of another for hire, he must be understood as promising to employ a reasonable degree of care and skill in the performance of such duties; and if injury results to the client from a want of such a degree of reasonable care and skill, the attorney may be held to respond in damages to the extent of the injury sustained. Proof of employment and the want of reasonable care and skill are prerequisites to the maintenance of the action; but it must not be understood that an attorney is liable for every mistake that may occur in practice, or that he may be held responsible to his client for every error of judgment in the conduct of his client's cause. Instead of that, the rule is that if he acts with a proper degree of skill, and with reasonable care and to the best of his knowledge, he will not be held responsible. *Bowman* v. *Tallman*, 27 How. (N. Y.) Pr. 212, 274.

If he fails in any of these respects he may, and sometimes does, not only forfeit all claim for compensation, but may also render himself liable to his client for any damage he may sustain from such neglect. Such liabilities frequently arise, and an attorney may also be liable to his client for the consequences of his want of reasonable care or skill in matters not in litigation. Business men not infrequently seek legal advice in making or receiving conveyances of real property, and it is well settled that an attorney may be liable to his client for negligence or want of reasonable care and skill in examining titles in such cases, whether the error occurs in respect to the title of property purchased or in the cove-

nants in the instrument of conveyance, where the property is sold.

Where the relation of attorney and client exists there is seldom any serious difficulty in determining whether the client has or has not a cause of action, or its nature and extent if one exists. Criterions of standard character are established in legal decisions by which every such controversy may be determined; but in the case before the court the defendant was never retained or employed by the plaintiffs, nor did they ever pay him any thing for making the certificates, nor did he ever perform any service at their request or in their behalf.

Neither fraud nor collusion is alleged or proved; and it is conceded that the certificates were made by the defendant at the request of the applicant for the loan, without any knowledge on the part of the defendant what use was to be made of the same or to whom they were to be presented. None of those matters are controverted; but the plaintiffs contend that an attorney in such a case is liable to the immediate sufferer for negligence in the examination of such a title, although he, the sufferer, did not employ the defendant, and the case shows that the service was performed for a third person without any knowledge that the certificate was to be used to procure a loan from the injured party.

Persons acting professionally in legal formalities, negotiations, or proceedings by the warrant or authority of their clients may be regarded as attorneys-at-law within the meaning of that designation as used in this country; and all such, when they undertake to conduct legal controversies or transactions, profess themselves to be reasonably well acquainted with the law and the rules and practice of the courts, and they are bound to exercise in such proceedings a reasonable degree of care, prudence, diligence, and skill. Authorities everywhere support that proposition; but attorneys do not profess to know all the law or to be incapable of error or mistake in applying it to the facts of every case, as even the most skilful of the profession would hardly be able to come up to that standard. Unless the client is injured by the deficiencies of his attorney, he cannot maintain any action for damages; but if he is injured, the true rule is that the attorney is liable for the

want of such skill, care, and diligence as men of the legal profession commonly possess and exercise in such matters of professional employment.

Both parties concur in these suggestions; but the defendant insists that, in order that such a liability may arise, there must be some privity of contract between the parties to enable the plaintiffs to maintain the action ; that inasmuch as the defendant was never retained or employed by the plaintiffs, and never rendered any service at their request or in their behalf, he cannot be held liable to them for any negligence or want of reasonable care, skill, or diligence in giving to a third party the certificates in question.

Beyond all doubt, the general rule is that the obligation of the attorney is to his client and not to a third party, and unless there is something in the circumstances of this case to. take it out of that general rule, it seems clear that the proposition of the defendant must be sustained. Sh. & Redf. Negl., sect. 215. Conclusive support to that rule is found in several cases of high authority. *Fish* v. *Kelly*, 17 C. B. N. S. 194.

Argument to show that the direct question was involved in that case is unnecessary, as the affirmative of the proposition sufficiently appears in the head-note, which is as follows: That an attorney is not liable to an action for negligence, at the suit of one between whom and himself the relation of attorney and client does not exist, for giving, in answer to a casual inquiry, erroneous information as to the contents of the deed.

Although the inquiry was addressed directly to the defendant, and the case shows that the answer was given to the person making it, the court held, Erle, C. J., giving the opinion, that there was no relation between the parties from which any contract could be implied, nor any relation between the parties from which any duty could arise. Mention is then made of the fact that the defendant was the solicitor of the trustees of a certain estate, and that the plaintiff was a workman in the employ of the trustees, from which the court deduced the conclusion that the parties did not stand in such a relation to each other as to make it any part of the duty of the defendant

to give the plaintiff any professional advice. His answer was entirely erroneous; but the court decided that he could not be held responsible, unless it could be shown that at the time he made it he knew it to be false.

Sufficient appears even in that case alone to show that the ruling of the subordinate court is correct, but it is a mistake to suppose that the proposition is without other support than what is derived from the reasons there assigned for the conclusion. Prior to that, the same question was decided by the highest court of the same country in the same way. Application to an insurance company was made by a certain party for a loan of money, which the company agreed to make if the party would insure his life, and assign to them the policy and give sureties for the payment of interest on the loan. It appears that the plaintiffs became sureties for the applicant, and that the defendant, a law agent employed by the principal who applied for the loan, drew up the papers in the transaction, among which was one intended for the security of the sureties, which proved to be incomplete. Loss was sustained by the sureties, and they brought suit against the law agent, charging that the loss was occasioned by his negligence and want of skill and other fault. Appearance was entered by the defendant, and he denied the alleged employment. Judgment was rendered for the plaintiffs in the lower court, and the defendant appealed to the House of Lords, where the appeal was argued by very able counsel. Opinions seriatim were delivered by the law lords. In substance and effect, Lord Campbell said that he never had any doubt of the unsoundness of the proposition that would maintain the action in such a case, and added, that there must be a privity of contract between the parties, which was not proved in that case.

No attempt was made by the appellee to controvert that proposition, but his counsel contended that the law of Scotland was different; that by the law of the latter country a law agent, in respect of damage occasioned by his neglects, is responsible to those who suffer by his default, although there may not have subsisted the relation of principal and agent between them. It was Lord Cranworth who responded to that proposition, and in the course of his judgment he commented upon

all the authorities cited in support of the same, and showed that they failed to establish it.

Emphatic concurrence in the conclusion announced by the Chancellor was expressed by Lord Wensleydale, to the effect following: that "he only who, by himself or another as his agent, employs the attorney to do the particular act in which the alleged neglect has taken place can sue him for that neglect, and that that employment must be affirmed in the declaration of the suit in distinct terms."

By the law of England the right of action depends entirely upon the question between whom the relation of principal and agent, client and attorney, subsists. Nothing more decisive of the question need be sought; and we have the authority of that great magistrate to say that it is impossible to support, by a single case in that country, so extraordinary a proposition as that persons who were not, by themselves or their agents, employers of law agents to do an act, could have remedy against such agents for the negligent performance of it.

Speaking to the same point, Lord Chelmsford said it is clear that this general proposition, abstracted from the facts of the case, cannot be maintained to its full extent, as it would apply to cases where there is no privity of contract between the parties, when it is conceded that no liability would arise. *Robertson* v. *Fleming*, 4 Macq. H. of L. Cas. 167, 209.

Analogous cases involving the same principle are quite numerous, a few of which only will be noticed. They show to a demonstration that it is not every one who suffers a loss from the negligence of another that can maintain a suit on such grounds. On the contrary, the limit of the doctrine relating to actionable negligence, says Beasley, C. J., is, that the person occasioning the loss must owe a duty, arising from contract or otherwise, to the person sustaining such loss. Such a restriction on the right to sue for a want of care in the exercise of employments or the transaction of business is plainly necessary to restrain the remedy from being pushed to an impracticable extreme. There would be no bounds to actions and litigious intricacies if the ill effects of the negligence of men may be followed down the chain of results to the final effect. *Kahl* v. *Love*, 37 N. J. L. 5, 8.

Injury was received by the driver of a mail-coach which broke down from defects in its construction. He brought suit against the constructor of the coach who sold the same to the owner of the line in whose employment the plaintiff was engaged when the accident happened. Held, by the whole court, that the action would not lie, as there is no privity of contract between the parties. Unless we confine the operation of such contracts as this to the parties who entered into them, said Lord Abinger, the most absurd consequences, to which no limit can be seen, will ensue; and Baron Alderson remarked, if we hold that the plaintiff can sue in such a case, there is no point at which such actions will stop. The only safe rule is to confine the right to recover to those who enter into the contract; if we go one step beyond that, there is no reason why we should not go fifty. *Winterbottom v. Wright*, 10 Mee. & W. 109, 115.

Cases where fraud and collusion are alleged and proved constitute exceptions to that rule, and Parke, B., very properly admits, in the following case, that other exceptions to it exist which are as sound in principle as the judgments which establish the rule. *Longmeid v. Holliday*, 6 Exch. Rep. 761–767.

Examples of the kind are given in that case, two of which deserve to be noticed, as they have been urged in argument to disprove the rule; but they cannot have any such effect, for the plain reason that they stand in many respects upon a different footing. These cases, say the court in that opinion, occur where there has been a wrong done to the person, for which he would have a right of action, though no such contract had been made; and the court gives as an illustration the patient injured by improper medicines prepared by an apothecary, or one unskilfully treated by a surgeon, where both would be liable to the injured party even if the father or friend of the patient contracted with the wrong-doer. Reported cases of the kind are cited by the plaintiffs, but it is obvious that they have no proper application to the case before the court. *Peppin and Wife v. Sheppard*, 11 Price, 400; *Gladwell v. Steggall*, 5 Bing. N. C. 733; *George v. Skivington*, Law Rep. 5 Exch. 1; *Philadelphia & Reading Railroad Co. v. Derby*, 14 How. 468, 484.

Many judicial decisions in this country besides those cited also adopt the same rule and fully recognize the same class of exceptions.

Pharmacists or apothecaries who compound or sell medicines, if .hey carelessly label a poison as a harmless medicine, and send it so labelled into the market, are liable to all persons who, without fault on their part, are injured by using it as such medicine, in consequence of the false label ; the rule being that the liability in such a case arises not out of any contract or direct privity between the wrong-doer and the person injured, but out of the duty which the law imposes on him to avoid acts in their nature dangerous to the lives of others. He is liable, therefore, though the poisonous drug with the label may have passed through many intermediate sales before it reached the hands of the person injured. *Thomas* v. *Winchester*, 2 Seld. 397, 410.

Such an act of negligence being imminently dangerous to the lives of others, the wrong-doer is liable to the injured party, whether there be any contract between them or not. Where the wrongful act is not immediately dangerous to the lives of others, the negligent party, unless he be a public agent in the performance of some duty, is in general liable only to the party with whom he contracted, and on the ground that negligence is a breach of the contract. *Collis* v. *Selden*, Law Rep. 3 C. P. 496.

Builders of a public work are answerable only to their employers for any want of reasonable care and skill in executing their contract, and they are not liable to third persons for accidents or injuries which may happen to them from imperfections of the structure after the same is completed and has been accepted by the employers. *The Mayor, &c. of Albany* v. *Cunliff*, 2 N. Y. 165, 174.

Misfortune to third persons not parties to the contract would not be a natural and necessary consequence of the builder's negligence, and such negligence is not an act imminently dangerous to human life. *Loop* v. *Litchfield*, 42 id. 351–358.

So where the manufacturer of a steam-boiler sold it to a paper company, it was held that the seller was only liable to the purchaser for defective materials, or for want of care and

skill in its construction, and if after delivery to and acceptance
by the purchaser, and while in use by him an explosion occurs
in consequence of such defective construction, to the injury of
third persons, the latter will have no cause of action against
the manufacturer. *Losee* v. *Clute*, 51 id. 494–496.

Exactly the same rule prevails in the State of Pennsylvania,
independent of any statutory regulation upon the subject, the
Supreme Court of the State holding that the liability of the
recorder in such a case is to the party who asks and pays for
the certificate, and not to his assigns or alienee. *Houseman* v.
*Girard Mutual Building & Loan Association*, 81 Pa. St. 256.

Satisfactory proof is exhibited that the defendant was duly
employed by the pretended owner of the lot to examine his
title to the same; and it is conceded that he did so, or that his
son made the search for him, and that he made and signed the
certificates in question, and that he was paid for his services
by his employer; nor is it questioned that the title was defec-
tive as alleged. Concede that, and it follows as an implication
of law that the defendant assumed to possess the requisite
knowledge and experience to perform the stipulated service,
and that he contracted with his employer that he would use
reasonable care and skill in the performance of the duties.
For a failure in either of these respects, if it resulted in
damage to his employer, he, the employer, is entitled to re-
cover compensation. *Chase* v. *Heaney*, 70 Ill. 268.

Decisions of the courts of the highest authority support that
proposition; but the difficulty in the way of the plaintiffs is
that they never employed the defendant to search the records,
examine the title, or make the report, and it clearly appears
that he never performed any such service at their request or
in their behalf, and that they never paid him any thing for the
service he did perform in respect to that transaction; nor is
there any evidence tending to show any privity of contract
between them and the defendant, within the meaning of the
law as expounded by the decisions of the court.

Every imputation of fraud is disclaimed, and it is clear that
the transaction is not one immediately dangerous to the lives
of others. Where there is fraud or collusion, the party will be
held liable, even though there is no privity of contract; but

where there is neither fraud or collusion nor privity of contract, the party will not be held liable, unless the act is one imminently dangerous to the lives of others, or is an act per formed in pursuance of some legal duty. *Langridge* v. *Levy*, 2 Mee. & W. 519, 530.

We agree, said Lord Denman, C. J., and affirm the judgment, on the ground stated by Parke, B., that as there is fraud and damage the result of that fraud, not from an act remote and consequential, but one contemplated by the defendant at the time as one of the results, the party guilty of the fraud is responsible to the party injured. *Langridge* v. *Levy*, 4 Mee. & W. 337.

Abstracts of titles and certificates of the same are frequently if not usually made by recorders, prothonotaries, or clerks, and in some States their liability is prescribed and regulated by statute. Sess. Laws (Pa.), 1872, 1040.

By that act those officers are declared liable for all loss or damage which may happen by reason of any false or erroneous certificate of search, not only to the person or persons to, for, or upon whose order the said certificate of search is made or given, but also to any person or persons claiming title through, from, or under such person or persons, or who may suffer loss by reason of the making or giving of any such false or erroneous certificate. But it is unnecessary to enter into any discussion of such regulations, as it is clear that there are none such in this District which can have any application in this case.

Testimony was introduced at the trial tending to show that there is a local usage in the District that the attorney examining the title of such an applicant for a loan shall be considered as also acting for the lender of the money, and complaint is made that the court below did not submit that evidence to the jury, with proper instructions. Evidence of usage is not admissible to contradict or vary what is clear and unambiguous, or to restrict or enlarge what requires no explanation. Omissions may be supplied in some cases by such proof, but it cannot prevail over or nullify the express provisions of the contract. So, where there is no contract, proof of usage will not make one, and it can only be admitted either to interpret

the meaning of the language employed by the parties, or where the meaning is equivocal or obscure. *Thompson* v. *Riggs*, 5 Wall. 663, 679.

Suffice it to say these parties never met, and there was no communication of any kind between the defendant and the brokers, or the lenders of the money. Nothing of the kind is pretended, the only suggestion in that direction being that it may be held that the applicant for the loan, when he employed the defendant, may be regarded as the agent of the plaintiffs. Such suggestion being entirely without evidence to support it, is entirely to no weight, especially as it appears that the principal certificate was procured several days before any interview upon the subject of the loan took place between the brokers and the plaintiffs.

*Judgment affirmed.*

MR. CHIEF JUSTICE WAITE, with whom concurred MR. JUSTICE SWAYNE and MR. JUSTICE BRADLEY, dissenting.

I am unable to agree to the judgment in this case. I think if a lawyer, employed to examine and certify to the recorded title of real property, gives his client a certificate which he knows or ought to know is to be used by the client in some business transaction with another person as evidence of the facts certified to, he is liable to such other person relying on his certificate for any loss resulting from his failure to find on record a conveyance affecting the title, which, by the use of ordinary professional care and skill, he might have found. That, as it seems to me, is this case. Ward was employed by Chapman to examine and certify to the title to a certain lot in Washington. The circumstances were such as ought to have satisfied him that his certificate was to be used by Chapman in some transaction with another person as evidence of the facts certified to. In examining the records he overlooked a deed, in all respects properly recorded, which showed on its face that Chapman had conveyed the lot away in fee-simple, and certified as follows : "Lot 55, in Chapman's subdivision of lots, in square 364. The title of Leonard S. Chapman to the above lot is good and the property is unincumbered. Wm. H. Ward." The National Savings Bank, relying on this certifi-

cate as true, loaned Chapman $3,500, taking for security a deed of trust of the lot.  It seems to me that under these circumstances Ward is liable to the bank for any loss it may sustain by reason of his erroneous certificate.