[No. C055869. Third Dist. Sept. 18, 2008.]

THE PEOPLE, Plaintiff and Respondent, v.
STEVEN ANDREW DEHLE, Defendant and Appellant.

**[CERTIFIED FOR PARTIAL PUBLICATION\*]**

\*Pursuant to California Rules of Court, rule 8.1110, this opinion is certified for publication with the exception of part II of the Discussion.

COUNSEL

Robert Navarro, under appointment by the Court of Appeal, for Defendant and Appellant.

Edmund G. Brown, Jr., Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Michael P. Farrell, Assistant Attorney General, Janis Shank McLean and Tia M. Coronado, Deputy Attorneys General, for Plaintiff and Respondent.

OPINION

**HULL, J.**—Defendant Steven Andrew Dehle pleaded no contest to vehicular manslaughter. (Pen. Code, § 192, subd. (c)(1); further undesignated statutory references are to the Penal Code.) In exchange, the court dismissed three other counts related to the incident in question and it was agreed defendant would not be sent to state prison for more than four years. Imposition of sentence was suspended and defendant was placed on probation for three years on the condition, among others, that he serve 365 days in the county jail. Following a hearing, the trial court ordered defendant to make restitution to the decedent's surviving spouse in the amount of $622,750.45.

On appeal, defendant contends (1) the trial court erred when it found him liable for restitution for the decedent's future earnings and household services, (2) the restitution hearing was invalid because it was prosecuted by the surviving spouse's private counsel rather than by the district attorney or his deputy, and (3) the large restitution order constitutes punishment, which was imposed without jury findings of fact in contravention of *Apprendi v. New Jersey* (2000) 530 U.S. 466 [147 L.Ed.2d 435, 120 S.Ct. 2348]; *Blakely v. Washington* (2004) 542 U.S. 296 [159 L.Ed.2d 403, 124 S.Ct. 2531]; *United States v. Booker* (2005) 543 U.S. 220 [160 L.Ed.2d 621, 125 S.Ct. 738]; and *Cunningham v. California* (2007) 549 U.S. 270 [166 L.Ed.2d 856, 127 S.Ct. 856]. Because we agree it was an abuse of discretion for the trial court to allow the restitution hearing to proceed without the presence of the district attorney, we reverse the judgment. We need not resolve the remaining assignments of error.

FACTS AND LEGAL PROCEEDINGS

*The Offense*

Because defendant pleaded no contest, our statement of the facts upon which the prosecution was based is taken from the probation officer's report.

On an evening in February 2006, California Highway Patrol officers were sent to the location of a motor vehicle accident. At that location, they found a Jeep resting on its side. John Bodine's head was crushed under the Jeep's roll bar.

The officers spoke to defendant, who was the driver, and his two backseat passengers. Defendant told an officer that the Jeep's throttle had stuck, causing the Jeep to accelerate. He swerved to avoid a pole and lost control of the Jeep at which point it overturned. An officer detected an odor of alcohol while talking to defendant and defendant admitted that he had consumed several beers after the accident occurred but said he had not consumed any alcohol before the accident. He failed a field sobriety test; his blood-alcohol content was 0.11 percent.

It appears that none of the occupants of the Jeep was wearing a seatbelt.

The two passengers told an officer that defendant did not drink any alcohol before the accident but after the accident he drank four to five beers in quick succession. The officer detected the odor of alcohol while talking to each of the passengers.

In a written statement prepared for the probation report, defendant explained that "the gas pedal stuck on the Jeep[.] I tried to get it unstuck as this

had worked in the past." Perhaps in response to preliminary hearing testimony that the Jeep could have been stopped by depressing the clutch, defendant explained that, "having just put a new engine in the Jeep I didn't want to blow it up," evidently by removing the load from the fast-turning engine. Defendant did not address the alternative of turning off the ignition switch.

### Restitution

In October 2006, after the terms and conditions of defendant's probation were set, the prosecutor asked the trial court to "expressly authorize [counsel for the decedent's surviving spouse, Debra Bodine] to conduct the restitution hearing on behalf of the victim. . . . [H]is knowledge of the case will allow much more full and accurate airing of the issues involved than if I handle it with him assisting me." Defendant objected that private counsel should not be allowed to perform the functions of the district attorney. The trial court ruled: "First of all, I think it's necessary and appropriate for the district attorney's office to participate in the restitution portion of these proceedings, and so without necessarily implying that [Bodine's counsel] doesn't have a right to have a presence either, I think it's the district attorney's responsibility to be present. [¶] So I expect the district attorney's office to continue to participate in that." The prosecutor replied, "Oh, absolutely."

At a conference in November 2006, the prosecutor renewed his request to have Bodine's counsel represent Bodine at the restitution hearing, stating that her counsel was "in a much better position to concisely present the case than" was the prosecutor. Defendant again objected.

In January 2007, the court conducted the restitution hearing. Neither the district attorney nor any of his deputies were present. Again defense counsel objected to the prosecutor's absence but the trial court overruled the objection. The court reasoned that the hearing was limited to the issue of direct victim restitution, and "I just kind of think we're wasting a resource to have some other person sit at the counsel table today."

Bodine's counsel called three witnesses; the decedent's employer, a retired economics professor, and Debra Bodine. Defendant called a certified public accountant.

In April 2007, the trial court found that Debra Bodine had suffered economic loss as a result of defendant's criminal conduct. Defendant was ordered to pay $748,183 for future lost earnings and $172,032 for future lost household services (§ 1202.4, subd. (a)(3)(B)), plus 10 percent interest per annum (§ 1202.4, subd. (f)(3)(G)). Defendant's liability was reduced by

$297,464.55, the amount of a civil wrongful death settlement. Although it was undisputed that Debra Bodine's attorney received $100,000 and costs in fees for pursuing the settlement, the trial court did not award Debra Bodine attorney fees because her attorney "declined to submit an itemized statement setting forth actual time spent on the case" and, therefore, the court did not have "sufficient information to determine the reasonableness of the fees." The total restitution ordered was $622,750.45.

Following a subsequent hearing in which the district attorney's office participated, defendant was ordered to pay $500 per month toward his restitution obligation. Payment of those sums was made an express condition of defendant's probation.

DISCUSSION

I

*The District Attorney's Absence from the Restitution Hearing*

Defendant contends the restitution hearing was invalid, and the restitution order void, because the hearing was prosecuted by Debra Bodine's counsel in the absence of the district attorney. In defendant's view, the trial court abused its discretion when it allowed the restitution hearing to go forward without the district attorney. We agree.

■ Restitution hearings held pursuant to section 1202.4 are sentencing hearings and are thus hearings which are a significant part of a criminal prosecution. (*People v. Giordano* (2007) 42 Cal.4th 644, 662, fn. 6 [68 Cal.Rptr.3d 51, 170 P.3d 623].) Restitution orders have as their goal economic compensation for the victim or victims of a defendant's crime, rehabilitation of the defendant, and the deterrence of the defendant and others from committing future offenses. (*People v. Bernal* (2002) 101 Cal.App.4th 155, 162 [123 Cal.Rptr.2d 622].)

"The district attorney is the public prosecutor, except as otherwise provided by law.

"The public prosecutor shall attend the courts, and within his or her discretion shall initiate and conduct on behalf of the people all prosecutions for public offenses." (Gov. Code, § 26500.)

■ "In California, all criminal prosecutions are conducted in the name of the People of the State of California and by their authority. (Gov. Code, § 100, subd. (b).) California law does not authorize private prosecutions. Instead,

'[t]he prosecution of criminal offenses on behalf of the People is the sole responsibility of the public prosecutor . . . . [¶] [who] ordinarily has sole discretion to determine whom to charge, what charges to file and pursue, and what punishment to seek. [Citation.] No private citizen, however personally aggrieved, may institute criminal proceedings independently [citation], and the prosecutor's own discretion is not subject to judicial control at the behest of persons other than the accused.' (*Dix* v. *Superior Court* (1991) 53 Cal.3d 442, 451 [279 Cal.Rptr. 834, 807 P.2d 1063].)

█ "The district attorney of each county is the public prosecutor, vested with the power to conduct on behalf of the People all prosecutions for public offenses within the county. (Gov. Code, § 26500; *Hicks* v. *Board of Supervisors* (1977) 69 Cal.App.3d 228, 240 [138 Cal.Rptr. 101].) Subject to supervision by the Attorney General (Cal. Const., art. V, § 13; Gov. Code, § 12550), therefore, the district attorney of each county independently exercises all the executive branch's discretionary powers in the initiation and conduct of criminal proceedings. (*People* ex rel. *Younger* v. *Superior Court* (1978) 86 Cal.App.3d 180, 203 [150 Cal.Rptr. 156]; *People* v. *Municipal Court* (*Pellegrino*) (1972) 27 Cal.App.3d 193, 199–204 [103 Cal.Rptr. 645].) The district attorney's discretionary functions extend from the investigation and gathering of evidence relating to criminal offenses (*Hicks* v. *Board of Supervisors, supra*, 69 Cal.App.3d at p. 241), through the crucial decisions of whom to charge and what charges to bring, to the numerous choices the prosecutor makes at trial regarding 'whether to seek, oppose, accept, or challenge judicial actions and rulings.' (*Dix* v. *Superior Court, supra*, 53 Cal.3d at p. 452; see also *People* v. *Superior Court* (*Greer*) (1977) 19 Cal.3d 255, 267 [137 Cal.Rptr. 476, 561 P.2d 1164] [giving as examples the manner of conducting voir dire examination, the granting of immunity, the use of particular witnesses, the choice of arguments, and the negotiation of plea bargains].)

█ "The importance, to the public as well as to individuals suspected or accused of crimes, that these discretionary functions be exercised 'with the highest degree of integrity and impartiality, and with the appearance thereof' (*People* v. *Superior Court* (*Greer*), *supra*, 19 Cal.3d at p. 267) cannot easily be overstated. The public prosecutor ' "is the representative not of any ordinary party to a controversy, but of a sovereignty whose obligation to govern impartially is as compelling as its obligation to govern at all; and whose interest, therefore, in a criminal prosecution is not that it shall win a case, but that justice shall be done. As such, he is in a peculiar and very definite sense the servant of the law, the twofold aim of which is that guilt shall not escape or innocence suffer." ' (*Id.* at p. 266, quoting *Berger* v. *United States* (1935) 295 U.S. 78, 88 [79 L.Ed. 1314, 1321, 55 S.Ct. 629].)

 "The nature of the impartiality required of the public prosecutor follows from the prosecutor's role as representative of the People as a body, rather than as individuals. 'The prosecutor speaks not solely for the victim, or the police, or those who support them, but for all the People. That body of "The People" includes the defendant and his family and those who care about him. It also includes the vast majority of citizens who know nothing about a particular case, but who give over to the prosecutor the authority to seek a just result in their name.' (Corrigan, *On Prosecutorial Ethics* (1986) 13 Hastings Const.L.Q. 537, 538–539.) Thus the district attorney is expected to exercise his or her discretionary functions in the interests of the People at large, and not under the influence or control of an interested individual. (*People* v. *Superior Court* (*Greer*), *supra*, 19 Cal.3d at p. 267.)

 "While the district attorney does have a duty of zealous advocacy, 'both the accused and the public have a legitimate expectation that his zeal . . . will be born of objective and impartial consideration of each individual case.' (*People* v. *Superior Court* (*Greer*), *supra*, 19 Cal.3d at p. 267.) 'Of course, a prosecutor need not be disinterested on the issue whether a prospective defendant has committed the crime with which he is charged. If honestly convinced of the defendant's guilt, the prosecutor is free, indeed obliged to be deeply interested in urging that view by any fair means. [Citation.] True disinterest on the issue of such a defendant's guilt is the domain of the judge and the jury—not the prosecutor. It is a bit easier to say what a disinterested prosecutor is not than what he is. He is not disinterested if he has, or is under the influence of others who have, an axe to grind against the defendant, as distinguished from the appropriate interest that members of society have in bringing a defendant to justice with respect to the crime with which he is charged.' (*Wright* v. *United States* (2d Cir. 1984) 732 F.2d 1048, 1056.)" (*People v. Eubanks* (1996) 14 Cal.4th 580, 588–590 [59 Cal.Rptr.2d 200, 927 P.2d 310].)

 As our long quote from *Eubanks* makes clear, the People have an interest in being heard throughout the course of a criminal prosecution and it is the duty of the district attorney to advocate on the People's behalf in an effort to achieve a fair and just result.

In this matter, both defendant and Debra Bodine had a voice at the restitution hearing; the People did not. The district attorney, having left the proceedings, did not allow the People to be heard on several issues that may have affected a fair and just result on the question of victim restitution. While we express no opinion on the resolution of these issues, they include, among others, the following: given the fact that it appears that the decedent was not wearing a seatbelt at the time of the accident, whether the decedent's own negligence contributed to his death and whether defendant should be required

to make restitution for economic harm caused in part by the victim himself; whether it was just to deny Debra Bodine restitution for her attorney fees in the underlying action against the insurance carrier because her attorney refused to produce his billing records; whether the proper measure of Debra Bodine's economic loss was the loss of John Bodine's gross income to age 67, adjusted as it was by Debra Bodine's expert witness, or something less than that, such as John Bodine's taxable income; whether it was appropriate to reduce John Bodine's gross income by 30 percent per year based on an estimate of his personal consumption; and whether the victim restitution statutes allow for or require compensation for the loss of a decedent's services around the home and, if so, the proper measure of that compensation.

We recognize that many of the questions that arose during the restitution hearing are the subject of developed law in a civil action for wrongful death. But the focus of a restitution hearing in a criminal matter—economic compensation to the victim, rehabilitation of the offender, and the deterrence of the offender and others from similar conduct—is different from the focus of a civil wrongful death action even though the former raises many of the same issues as the latter. The goals of a restitution hearing are matters that the People expect will be achieved in a just and fair manner which can only be accomplished with the participation of the district attorney acting in accordance with his responsibilities to the criminal justice system.

We also recognize that, in September 2006, approximately four months prior to the restitution hearing, the district attorney submitted a letter to the court requesting restitution to Debra Bodine in the amount of $985,324. The letter does not explain the process by which the district attorney arrived at that number. While that letter is some indication of the district attorney's point of view regarding restitution in September 2006, we cannot say it was a figure informed by the evidence and issues presented four months later at the restitution hearing. The district attorney's obligation to the People to seek a just and fair result can only be accomplished by his presence at the hearing and his consideration of the evidence and issues presented as they bear on the ultimate goals of victim restitution in a criminal case.

Finally, we note that it has long been the law in California that the trial court may permit private counsel to assist the district attorney in a given prosecution. Thus, in *People v. Blackwell* (1864) 27 Cal. 65, our high court said: "It appears from the record that the Court, by the request of the District Attorney, permitted other counsel to assist him at the trial. Before the trial commenced, however, the counsel of the appellant moved the Court to vacate the order. The motion was overruled and the defendant excepted.

"It appears that the District Attorney had the active superintendence and management of the case during the progress of the trial. Whether the State,

through him, should be allowed to avail itself of additional professional aid, was a matter addressed to the discretion of the Court, and there is nothing in the record showing that the Court abused its discretion in granting the request of the attorney. [Citation.]" (*Id.* at p. 67.)

In *People v. Turcott* (1884) 65 Cal. 126 [3 P. 461], the same issue arose. In *Turcott*, the trial court allowed private counsel to assist the district attorney in the prosecution of the case. The defendant claimed error. In resolving the issue, the *Turcott* court wrote: "The practice allowing district attorneys to have the assistance of other counsel in the prosecution of criminal cases has existed and been acquiesced in almost since the organization of the State, and this practice seems to have been sanctioned by legislative action. In prescribing the course of the trial the legislature has provided by the second subdivision of section 1093 of the Penal Code, that the district attorney or other counsel for the people must open the cause and offer the evidence in support of the charge, and by section 1095—that if the indictment or information be for an offense punishable with death—two counsel on each side may argue the cause to the jury. We think the point not well taken." (*Turcott, supra*, 65 Cal. 126 at pp. 126–127.)

Section 1093, still in effect and not amended as pertinent to our discussion, now provides in subdivision (b): "The district attorney, or *other counsel for the people*, may make an opening statement in support of the charge." (§ 1093, subd. (b), italics added.)

 In this matter however, Debra Bodine's attorney was not appearing on behalf of the district attorney or the People, he was appearing solely on behalf of Debra Bodine. We have not been cited to a case, and we are aware of none, where the district attorney in a criminal proceeding has been permitted to simply walk away from an important part of the criminal proceedings, leaving conduct of the restitution hearing to a private attorney who has a duty only to his client and no duty to the People.

The trial court abused its discretion when it allowed the restitution hearing to go forward without the presence of the People and there must be a new restitution hearing.

II

*The New Restitution Hearing**

· · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · ·

*See footnote, *ante*, page 1380.

## Disposition

The judgment is reversed and the matter is remanded to the trial court to conduct a new restitution hearing held in accordance with the views set forth herein.

Blease, Acting P. J., and Butz, J., concurred.