699 S.E.2d 161

**In the Matter of RICHLAND COUNTY MAGISTRATE'S COURT, Fifth Judicial Circuit Solicitor W. Barney Giese, Petitioner.**

No. 26876.

Supreme Court of South Carolina.

Heard Jan. 5, 2010.
Decided Sept. 7, 2010.

W. Barney Giese, Solicitor, and Aaron S. Jophlin, Assistant Solicitor, both of Columbia, for Petitioner.

Douglas S. Strickler, Chief Public Defender, Chris S. Truluck, Assistant Public Defender, and Charlie W. Cochran, Assistant Public Defender, all of Columbia, for Respondent.

Justice PLEICONES.

Petitioner, Fifth Judicial Circuit Solicitor W. Barney Giese, filed this declaratory judgment action in the Court's original jurisdiction seeking a determination whether it is the unauthorized practice of law for a non-lawyer to represent a business as prosecutor of a criminal misdemeanor charge, other than a traffic offense, in magistrate's court. We hold that such action constitutes the unauthorized practice of law.

## BACKGROUND

In May 2009, two cases involving the prosecution and recovery of worthless checks were called in Richland County magistrate's court. In each case, a non-lawyer field agent from the local business purported to act as prosecutor and both defendants were represented by the Richland County Public Defender's Office. At the call of each case, defense counsel moved to dismiss for lack of prosecution, arguing that the practice of representative agents proceeding against criminal defendants in magistrate's court constitutes the unauthorized practice of law. Without proceeding to trial, the trial judge took the motions under advisement, and thereafter granted a continuance in order to notify Petitioner, who then filed this action. This Court granted Petitioner's request to hear the matter in its original jurisdiction.

## ISSUE

Is it the unauthorized practice of law for a non-lawyer representing a business to prosecute a criminal misdemeanor charge, other than a traffic offense, in magistrate's court?

## DISCUSSION

The unique nature of criminal law and the corresponding unique role of the prosecutor illustrate the danger in allowing private prosecutions. Black's Law Dictionary defines "criminal law" as "[t]he body of law defining offenses *against the community at large*, regulating how suspects are investigated, charged, and tried, and establishing punishments for convicted offenders." Black's Law Dictionary 403 (8th ed.2004) (emphasis added). As the Supreme Court of the

United States has noted, " 'The purpose of a criminal court is not to provide a forum for the ascertainment of private rights. Rather it is to vindicate the *public interest* in the enforcement of the criminal law while at the same time safeguarding the rights of the individual defendant.' " *Standefer v. United States*, 447 U.S. 10, 25, 100 S.Ct. 1999, 2008, 64 L.Ed.2d 689, 701 (1980), citing *United States v. Standefer*, 610 F.2d 1076, 1093 (3d Cir.1979) (emphasis added). Because a prosecutor is an attorney representing community, rather than private interests, the prosecutor's role is very different from that of a civil attorney:

> A solicitor should bear in mind that he is an officer of the court, who represents all the people, including [the] accused, and [he] occupies a quasi-judicial position, whose sanctions and traditions he should preserve. It is his duty to see that justice is done. He must see that no conviction takes place except in strict conformity with the law, and that [the] accused is not deprived of any constitutional rights or privileges. However strong the prosecuting attorney's belief may be of the prisoner's guilt, it is his duty to conduct the trial in such a manner as will be fair and impartial to the rights of the accused, ... and not say or do anything which might improperly affect or influence the jury or [the] accused's counsel.[1]

*See State v. Rayfield*, 369 S.C. 106, 114–15, 631 S.E.2d 244, 248–49 (2006), citing *State v. King*, 222 S.C. 108, 119, 71 S.E.2d 793, 798 (1952).

In carrying out his duty, the prosecutor independently decides whether to prosecute, decides what evidence to submit to the court, and negotiates the State's position in plea bargaining. *See Ex parte Littlefield*, 343 S.C. 212, 218, 540 S.E.2d 81, 84 (2000). The South Carolina Constitution, South Carolina statutes and case law place the unfettered discretion to prosecute solely in the prosecutor's hands. *See State v. Thrift*, 312 S.C. 282, 291–92, 440 S.E.2d 341, 346 (1994), citing S.C. Const. art. V, § 24; S.C.Code Ann. § 17–1–10 (2009). "The importance to the public as well as to individuals sus-

---

1. *See also Berger v. United States,* 295 U.S. 78, 88, 55 S.Ct. 629, 633, 79 L.Ed. 1314, 1321 (1935), for discussion of the role of the United States Attorney.

pected or accused of crimes, that these discretionary functions be exercised 'with the highest degree of integrity and impartiality, and with the appearance thereof' cannot easily be overstated." *People v. Dehle*, 166 Cal.App.4th 1380, 83 Cal. Rptr.3d 461, 465 (2008), citing *People v. Superior Court*, 19 Cal.3d 255, 137 Cal.Rptr. 476, 561 P.2d 1164 (1977).

If a private party is permitted to prosecute a criminal action, we can no longer be assured that the powers of the State are employed only for the interest of the community at large. In fact, we can be absolutely certain that the interests of the private party will influence the prosecution, whether the self-interest lies in encouraging payment of a corporation's debt, influencing settlement in a civil suit, or merely seeking vengeance. Petitioner candidly acknowledges in its brief that the non-lawyers are authorized by the companies "to represent their interests" in the criminal proceedings.

We find that allowing prosecution decisions to be made by, or even influenced by, private interests would do irreparable harm to our criminal justice system. At the very least, there is "too much opportunity for abuse and too little motivation for detachment."[2] *See State v. Martineau*, 148 N.H. 259, 808 A.2d 51, 55 (2002), Nadeau, J., concurring. Though we certainly understand the practical concerns raised by the dissent, we are confronted with a higher question here. The convenience and fiscal economy of private prosecution may be facially appealing, but we must not embrace them at the expense of fundamental fairness and justice.[3]

▪▪ Petitioner contends that S.C.Code Ann. § 33–1–103 (2009) "clearly authorizes the conduct in Richland County magistrate's court when companies authorize their employees or agents to represent their interests" in criminal magistrate's

---

**2.** If the business wishes to be party to the action, it may, through private counsel, seek to assist the solicitor. *See State v. Nichols*, 325 S.C. 111, 481 S.E.2d 118 (1997) ("Private counsel's participation in a trial to assist the solicitor has been sanctioned....").

**3.** As the dissent notes, then acting circuit judge John Kittredge in *In re Lexington County Transfer Court* acknowledged the limited resources and budgetary constraints faced by solicitors. 334 S.C. 47, 512 S.E.2d 791 (1999). However, Justice Kittredge ultimately concluded that no exception was warranted, despite such important practical considerations.

court. Section 33–1–103 provides that a corporation or partnership may designate an employee or principal to represent it in magistrate's court. S.C.Code Ann. § 33–1–103 (2009). We find this statute merely comports with our case law, which allows for a non-lawyer to represent a corporation in magistrate's court in certain civil actions. *See, e.g., State ex rel. Daniel v. Wells,* 191 S.C. 468, 5 S.E.2d 181 (1939); *In re Unauthorized Practice of Law Rules Proposed by the South Carolina Bar,* 309 S.C. 304, 422 S.E.2d 123 (1992). It does not, as Petitioner contends, authorize such representation in a criminal matter. Moreover, we note that our Constitution vests this Court with the sole authority to regulate the practice of law. S.C. Const. art. V, § 4; S.C.Code Ann. § 40–5–10 (2009).

Petitioner correctly notes that this Court has previously permitted persons other than solicitors to prosecute criminal cases in magistrate's court. *See, e.g., State v. Messervy,* 258 S.C. 110, 187 S.E.2d 524 (1972); *City of Easley v. Cartee,* 309 S.C. 420, 424 S.E.2d 491 (1992). Though this Court sanctioned the practices of allowing the arresting South Carolina Highway Patrol officer to prosecute traffic-related offenses and licensed security officers to prosecute misdemeanor cases in magistrate's court, such non-attorneys are law enforcement officers acting in the capacity of public officials and are sworn to uphold the law. *See Messervy,* 258 S.C. at 112, 187 S.E.2d at 525; *Cartee,* 309 S.C. at 422, 424 S.E.2d at 491; S.C.Code Ann. § 8–11–20 (2009). Consequently, they act on behalf of the State. *See State v. Bridgers,* 329 S.C. 11, 14, 495 S.E.2d 196, 198 (1997) ("[A]s law enforcement officers, they are charged with the discretionary exercise of the sovereign power. Specifically, they must enforce the 'traffic and other related laws.' "). This classification was essential to the Court's holding in *Cartee. Cartee,* 309 S.C. at 422, 424 S.E.2d at 491 ("Therefore, *in light of the legislature's extension of law enforcement authority to licensed security officers,* we hold that licensed security officers may prosecute misdemeanor cases in magistrate's or municipal court.") (emphasis added). As a non-lawyer representing a corporation is not a law enforcement officer, we cannot assume that he will act in the interests of the community. Moreover, as a non-lawyer, the representative of the corporation is not bound by professional

ethical restraints. Consequently, the non-lawyer prosecutor not only acts on interests other than those of the community but is also not bound by ethical rules, yet his prosecution may result in the imprisonment of the defendant. *See* S.C.Code Ann. § 22–3–550 (2007).[4]

The dissent contends that our decision today represents "a marked departure from prior jurisprudence of this Court. . . ." We disagree. On the contrary, we rest our decision on centuries-old principles of law. *See* 1 W. Blackstone, Commentaries on the Laws of England, 200 (1851) (The king is "the proper person to prosecute for all public offenses and breaches of the peace, being the person injured in the eye of the law."); 1 F. Wharton, Criminal Law § 10, p. 11 (11th ed. 1912) ("Penal justice, therefore, is a distinctive prerogative of the State, to be exercised in the service and in the satisfaction of the duty of the State. . . ."); J. Locke, Second Treatise of Civil Government, § 88, p. 55 (1905) ("[E]very man who has entered into civil society, and is become a member of any commonwealth, has thereby quitted his power to punish offences against the law of nature in prosecution of his own private judgment[.] . . . [H]e has given a right to the commonwealth to employ his force for the execution of the judgments of the commonwealth. . . ."); *Huntington v. Attrill,* 146 U.S. 657, 669, 13 S.Ct. 224, 228, 36 L.Ed. 1123, 1128 (1892) ("Crimes and offenses against the laws of any State can only be defined, prosecuted and pardoned by the sovereign authority of that State.").

## CONCLUSION

The dignity and might of the State are brought to bear in decisions to prosecute. These decisions must not be made by interested parties. We therefore find that a non-lawyer's representation of a business entity in criminal magistrate's court runs afoul of South Carolina law, is repugnant to our

---

**4.** We acknowledge the differences between magistrate's court and general sessions court, as cited by the dissent, but the forum does not change the criminal nature of the action. The power of prosecution and the might of the criminal justice system must rest solely with the community as a whole.

system of justice and constitutes the unauthorized practice of law.

## PRACTICE DECLARED UNAUTHORIZED.

BEATTY and KITTREDGE, JJ., concur. HEARN, J., dissenting in a separate opinion in which TOAL, C.J., concurs.

Justice HEARN.

I respectfully dissent. Employing a practical and realistic approach to the analysis of whether or not questionable conduct qualifies as the unauthorized practice of law, as this Court has always endeavored to do, I would hold the representation of business entities by non-lawyer officers, agents, or employees is authorized in criminal magistrate's court proceedings.

Today, in a marked departure from prior jurisprudence of this Court as to what constitutes the practice of law, the majority focuses on the status of the individual presenting evidence rather than on the character of the services rendered, and holds that the role of the business entity's representative in this context is "repugnant to our system of justice." As a pragmatist who is mindful, not only of the purpose behind the magistrate's court system, but also the impact which the majority's decision will have on this State's business community and solicitors' offices, I must disagree.

The Constitution of South Carolina grants this Court the power to regulate the practice of law. S.C. Const. art. V, § 4; *see also* S.C.Code Ann. § 40–5–10 (2001). Rather than attempt a comprehensive definition of the practice of law, we have instead resolved to decide what is and what is not the unauthorized practice of law on a case by case basis. *In re Unauthorized Practice of Law Rules Proposed by the South Carolina Bar*, 309 S.C. 304, 305–07, 422 S.E.2d 123, 124–25 (1992). This issue of what constitutes the unauthorized practice of law has evolved over time. In *State ex rel. Daniel v. Wells*, the Court held a non-lawyer insurance adjuster could not represent a corporation before the South Carolina Industrial Commission. 191 S.C. 468, 5 S.E.2d 181 (1939). Rejecting the argument that a corporation acts through its agents, and was therefore authorized to represent itself, the Court

stated: "A corporation is not a natural person. It is an artificial entity created by law. Being an artificial entity it cannot appear or act in person. It must act in all its affairs through agents or representatives. In legal matters, it must act, if at all, through licensed attorneys." *Id.* at 480, 5 S.E.2d at 186 (citation omitted).

In *Unauthorized Practice of Law,* the Court modified the bright line established in *Wells* by holding a non-lawyer, officer, agent, or employee may represent a business entity in civil magistrate's court. 309 S.C. at 305–06, 422 S.E.2d at 124.[5] The issue presented in this case is whether the Court should now sanction the similar representation of business entities' interests in criminal magistrate's court, a practice which has gone on, unchallenged, and apparently without incident, for years. I would find the practice is authorized, and further modify *Wells* accordingly.

I begin my analysis with an examination of what type of conduct constitutes the practice of law. The United States Supreme Court has defined attorneys at law as "[p]ersons acting professionally in legal formalities, negotiations, or proceedings by the warrant or authority of their clients...." *Nat'l Sav. Bank of Dist. of Columbia v. Ward,* 100 U.S. 195, 199, 10 Otto 195, 25 L.Ed. 621 (1879); *see also In re Duncan,* 83 S.C. 186, 189, 65 S.E. 210, 211 (1909) (adopting the Supreme Court's definition of an attorney as articulated in *Ward*). In accordance with this definition, we have recognized that the practice of law extends beyond litigation and includes "activities in other fields which entail specialized legal knowledge and ability." *State v. Buyers Service Co., Inc.,* 292 S.C. 426, 430, 357 S.E.2d 15, 17 (1987). However, in determining whether the activity in question constitutes the practice of law, this Court has always focused on the *character* of the services rendered. *Matter of Peeples,* 297 S.C. 36, 41, 374 S.E.2d 674, 677 (1988) (citing *Wells,* 191 S.C. 468, 5 S.E.2d 181 (1939) (stating "[i]t is the *character* of the services rendered ... which determines whether the acts constitute the practice of law") (emphasis in original)).

---

5. Thereafter, in *Renaissance Enterprises,* the Court declined to extend *Wells* to allow a non-lawyer to represent a corporation in the circuit or appellate courts of this State. 334 S.C. 649, 653, 515 S.E.2d 257, 259 (1999).

As described above, in *Unauthorized Practice of Law,* the Court determined a non-lawyer's representation of a business entity in civil magistrate's court did not constitute the unauthorized practice of law. 309 S.C. at 305–06, 422 S.E.2d at 124. In applying the same rationale used there, I fail to discern any viable reason to treat a non-lawyer's representation of a business entity in criminal magistrate's court any differently. Initially, non-lawyer representatives in civil and criminal magistrate's court perform identical services. In both settings, non-lawyer representatives are responsible for marshalling and presenting evidence the corporation has against the defendant. The character of these services is more similar to those performed by a fact witness testifying at trial, rather than to services provided by an attorney or a solicitor. Significantly, the compilation, maintenance, and presentation of evidence does *not* require legal analysis or prosecutorial discretion.

Conversely, and I might add in contravention to what was argued by the State, the majority maintains that the effect of a decision authorizing this conduct will encroach upon the prosecutorial power reserved exclusively to solicitors. *See* S.C.Code Ann. § 17–1–10 (2003) (stating a criminal action is prosecuted by the State, as a party, against a person charged with a public offense). However, this Court has previously permitted persons other than solicitors to prosecute criminal cases in magistrate's court. In *State v. Messervy,* the Court upheld the common practice in magistrates' courts of allowing arresting officers of the South Carolina Highway Patrol to prosecute traffic-related offenses without the assistance of a solicitor. 258 S.C. 110, 187 S.E.2d 524 (1972). While in *Messervy* the argument that this practice constituted the unauthorized practice of law was not raised, in *State ex rel. McLeod v. Seaborn,* a declaratory judgment action was brought to challenge the Highway Patrol's practice of assigning supervisory officers to assist new or inexperienced arresting officers in the prosecution of their cases. 270 S.C. 696, 244 S.E.2d 317 (1978). The Court found no distinction between the practice previously permitted in *Messervy* and the procedure challenged in *Seaborn,* and specifically held the practices did not constitute the unauthorized practice of law. *Id.* at 698–99, 244 S.E.2d at 319. Important to the facts presented here, the Court in *Seaborn* noted these individuals

did not hold themselves out to the public as attorneys, and their participation rendered "an important service to the public by promoting the prompt and efficient administration of justice." *Id.* at 699, 244 S.E.2d at 319. Admittedly, the analysis was bolstered by the Court's acknowledgment that the arresting or supervisory officers were acting in their official capacities as law enforcement officers and employees of the State in presenting cases before the magistrate's court. *Id.* at 698–99, 244 S.E.2d at 319. The Court has also held a probation officer acts in his official capacity in the presentation of a probation revocation case on behalf of the state. *See State v. Barlow,* 372 S.C. 534, 539, 643 S.E.2d 682, 685 (2007) (citing *Seaborn,* 270 S.C. 696, 698–99, 244 S.E.2d 317, 319).

The majority's decision today effectively overrules and undermines the continued viability of the Court's longstanding and practical jurisprudence adopted in *Messervy, Seaborn,* and *State v. Sossamon,* 298 S.C. 72, 378 S.E.2d 259 (1989), as affirmed in *Unauthorized Practice of Law,* 309 S.C. at 307, 422 S.E.2d at 125. Alluding to *Seaborn,* the majority focuses on the absence of a State actor or representative in the actions in question here. Unlike the majority, however, I would not allow the status of the individual presenting the case to trump the character of the services being rendered because in my view, the non-lawyer's status as a State employee in the earlier trilogy of cases serves as a distinction without a difference. Indeed, the majority's selective reliance on the differences between civil and criminal law, and its corresponding determination that solicitors retain the exclusive jurisdiction to pursue criminal prosecutions, calls into question the continued viability of permitting police officers or their supervisors to prosecute traffic offenses in magistrate's court. The majority does not undertake a practical analysis of the character of the actual services to be provided by non-lawyer agents in criminal magistrate's court as compared to the activities already permitted by this Court in its case law, possibly because there *is* no practical or meaningful difference between the representation of a corporation in civil versus criminal magistrate's courts, insofar as whether the conduct by non-lawyers should be authorized or not.

I believe the majority's strong emphasis on the criminal nature of the proceedings involved misses the mark. According to our Constitution, the Attorney General serves as the

State's chief prosecuting officer, with the authority to supervise the prosecution of all criminal cases *in courts of record.* S.C. Const. art. V, § 24 (emphasis added); *cf. State ex rel. McLeod v. Snipes,* 266 S.C. 415, 420, 223 S.E.2d 853, 855 (1976) (recognizing that the duty to actually prosecute criminal cases is performed primarily and almost exclusively by the solicitors except in those situations when a solicitor calls upon the Attorney General for assistance).  Magistrate's court is summary in nature and is not a court of record. *State v. Duncan,* 269 S.C. 510, 514, 238 S.E.2d 205, 207 (1977); *see also* S.C.Code Ann. § 22–3–730 (2007).  Furthermore, as discussed by the Court in *In re Lexington County Transfer Court,* the solicitor's office is under no duty to prosecute a case brought under the original jurisdiction of the magistrate's court.  334 S.C. 47, 54, 512 S.E.2d 791, 794 (1999) (citing S.C.Code Ann. § 22–3–545(C) (2007)) (explaining a difference between magistrate's court and the transfer court system established by the General Assembly, wherein cases transferred to the magistrate's court from general sessions court "must be prosecuted by the solicitor's office").  Therefore, contrary to the majority's view, there is no requirement that the Attorney General or a solicitor prosecute criminal misdemeanor charges in magistrate's court.

The majority relies heavily on what it perceives to be the inevitable confluence of self-interest and our criminal justice system.  *See supra* ("[W]e can be absolutely certain that the interests of the private party will influence the prosecution. . . .").  It is argued that the State, and by extension the solicitor, prosecutes an individual for a crime in the pursuit of justice alone, while allowing a self-interested party to assume that role would interject issues that would corrupt the integrity of magistrate's courts.  While I am mindful of the pitfalls that could potentially accompany the decision to allow representation by non-lawyers in this context, these concerns are, in my view, wholly speculative.  Moreover, it is worth noting that whether evidence is presented by a solicitor, an attorney, or a non-lawyer agent, the magistrate judge retains complete control over the pursuit of justice in his or her courtroom. Accordingly, I do not share the majority's apparent lack of confidence that a business-entity's self-representation will somehow undermine magistrate's court system.  As noted by the Court in *Messervy,* the practice of allowing non-lawyer

participation in magistrate's court is not without its problems; nevertheless, the non-lawyer's conduct is subject to the same level of scrutiny by the magistrate that has heretofore adequately overseen this critical level of our court system. 258 S.C. at 113, 187 S.E.2d at 525.

Furthermore, I believe consideration of the very nature of magistrate's court hits the bulls-eye in terms of whether or not this practice should be sanctioned. Magistrates have exclusive jurisdiction of all criminal cases for which the punishment does not exceed a fine of one hundred dollars or imprisonment for thirty days. S.C.Code Ann. § 22–3–540 (2007). In addition, magistrates have jurisdiction over all offenses which are subject to: penalties of a fine or forfeiture not exceeding five hundred dollars; imprisonment not exceeding thirty days per offense, or a total of ninety days if sentencing consecutively; [6] and magistrates also have the power to order restitution in an amount not exceeding five thousand dollars. S.C.Code Ann. § 22–3–550 (2007). Rather than by indictment, criminal magistrate's court proceedings are commenced on information under oath, plainly and substantially setting forth the offense charged, after which an arrest warrant is issued. S.C.Code Ann. § 22–3–710 (2007). Additionally, our law provides that where the arrest warrant is signed by non-law enforcement personnel, the person charged is given a courtesy summons notifying him or her of the charge or charges. S.C.Code Ann. § 22–3–330 (Supp.2009).

One of the purposes of magistrate's court is to dispense with the formalities required of a court of general sessions, allowing for a more expedient and layperson-friendly disposition of certain select grievances and offenses. The fact that the General Assembly has not required magistrates to be attorneys is further indication of its intention to retain the citizen focus of the court. See S.C.Code Ann. § 22–1–10 (2007). In short, magistrate's court was created by the General Assembly to be the "peoples' court," a distinction that seems to have been overlooked by the majority in its analysis.

---

6. An exception to the rule that a magistrate may not sentence someone to more than ninety days imprisonment, if sentencing consecutively, does not apply to convictions resulting from violations of Chapter 11 of Title 34, pertaining to fraudulent checks, or violations of section 16–13–110(B)(1) of the South Carolina Code (2003), relating to shoplifting. S.C.Code Ann. § 22–3–550(B) (2007).

Finally, at the risk of discussing a possible parade of horribles, the practical consequences of the majority's decision should nonetheless be examined. This decision will place an additional burden on the South Carolina business community, as well as on the already budget-strained and time-challenged prosecutorial arm of the State. Without the ability to make a cost/benefit analysis of whether to pursue their own claims, corporations may be more willing to pursue prosecution, secure in the knowledge that the burden of prosecuting the claims rests squarely on the shoulders of the solicitor's office. On the other hand, overburdened solicitor's offices may exercise prosecutorial discretion to *not* prosecute these minor cases, which might very well have the end result of businesses refusing to accept checks in payment for merchandise. As discussed by then acting circuit judge, John Kittredge in *Lexington County Transfer Court*, limited resources and budgetary constraints can serve as a valuable consideration in determining whether practices should qualify as an exception to the prohibition against the unauthorized practice of law. 334 S.C. at 53–54, 512 S.E.2d at 794. As a state, we certainly want these and all crimes to be prosecuted; nonetheless, a process that becomes too cumbersome and costly for the State to pursue does not successfully address the problem. Permitting a process whereby business entities can pursue these claims through an agent, in a manner which is cost-effective for both the State and the corporations, yet checked by the integrity of our judicial system, is, in my opinion, a practice which should be sanctioned by this Court.

I would therefore further modify *Wells* today and logically extend our case law to permit a business entity to be represented by a non-lawyer officer, agent, or employee in criminal magistrate's court proceedings. Under my view, businesses would be able to continue the practice which has been going on for years and thus make informed decisions about whether their interests are adequately protected by non-lawyer representatives in magistrate's court, both civil and criminal. Any potential pitfalls in this process would be counterbalanced by the direct control and oversight of the magistrate's courts of this State.

TOAL, C.J., concurs.