Filed 4/3/25  P. v. Greenway CA5

NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

# FIFTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE, | F087768 |
| Plaintiff and Respondent, | (Super. Ct. No. CRF66463) |
| v. | |
| SHAYNE ROBERT GREENWAY, | OPINION |
| Defendant and Appellant. | |

## THE COURT[*]

APPEAL from a judgment of the Superior Court of Tuolumne County.  Kevin M. Seibert, Judge.

Aaron J. Schechter, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Kimberley A. Donohue, Assistant Attorney General, Eric L. Christoffersen and Christopher J. Rench, Deputy Attorneys General, for Plaintiff and Respondent.

-ooOoo-

---

[*]  Before Peña, Acting P. J., Meehan, J. and Snauffer, J.

A jury found defendant Shayne Robert Greenway guilty of first degree residential burglary. He was sentenced to 12 years in prison and ordered to pay restitution fines.

On appeal, defendant claims the trial court committed sentencing errors that require remand. First, defendant argues that he unknowingly and unintelligently waived his right to a jury trial and admitted two aggravating factors after the trial court misrepresented to him that he only had a right to a court trial on those facts. (Cal. Rules of Court,[1] rule 4.421(b)(2), (b)(3).) Defendant maintains these facts were not proved in compliance with the requirements of Penal Code[2] section 1170, subdivision (b) as modified by Senate Bill No. 567 (2021–2022 Reg. Sess.) (Senate Bill 567) and thus, resentencing is required because the People cannot prove beyond a reasonable doubt the court still would have imposed the upper term. Defendant also argues the court violated his constitutional right to due process by imposing a restitution fine without determining defendant's ability to pay. Last, defendant requests the victim restitution order be corrected to reflect the oral pronouncement of judgment.

While the People agree that the two aggravating factors were improperly admitted, they argue the error was harmless. The People further contend defendant forfeited his claim for failure to object to the trial court's imposition of the restitution fine at the time of sentencing, and even reaching the merits, argue defendant's claim fails. The parties agree the trial court should amend the victim restitution order to comport with the oral pronouncement of judgment.

We vacate defendant's sentence and remand for full resentencing in conformity with section 1170, subdivision (b). We direct the trial court to issue an amended victim restitution order. In all other respects, we affirm.

---

[1] All further rule references are to the California Rules of Court.

[2] All statutory references are to the Penal Code.

## PROCEDURAL BACKGROUND

On September 26, 2023, the Tuolumne County District Attorney filed a first amended information charging defendant with first degree residential burglary (§ 459; count 1). As to count 1, the amended information alleged defendant suffered a prior strike conviction within the meaning of the "Three Strikes" law (§§ 667, subds. (b)–(i), 1170.12, subds. (a)–(d)) and alleged the following aggravating factors: defendant induced others to participate in the commission of the crime (rule 4.421(a)(4)), the manner in which the crime was carried out indicates planning, sophistication, or professionalism (rule 4.421(a)(8)), the crime involved a taking or damage of great monetary value (rule 4.421(a)(9)), defendant took advantage of a position of trust or confidence (rule 4.421(a)(11)), defendant's prior convictions are numerous or of increasing seriousness (rule 4.421(b)(2)), and defendant served a prior prison term (rule 4.421(b)(3)).

On October 2, 2023, defendant waived his right to a jury trial and admitted he suffered a prior serious felony burglary conviction. Thereafter, defendant waived his right to a court trial and admitted the following two aggravating factors: defendant's prior convictions are numerous or of increasing seriousness (rule 4.421(b)(2)) and defendant served a prior prison term (rule 4.421(b)(3)).

On October 5, 2023, a jury found defendant guilty as charged on count 1. The jury also found true three aggravating factors: defendant induced others to participate in the commission of the crime (rule 4.421(a)(4)), the manner in which the crime was carried out indicates planning, sophistication, or professionalism (rule 4.421(a)(8)), and the crime involved a taking or damage of great monetary value (rule 4.421(a)(9)).[3]

---

[3] The jury was not instructed on rule 4.421(a)(11), defendant took advantage of a position of trust or confidence, and thus did not return a finding on it.

On January 4, 2024, the trial court denied defendant's motion pursuant to *People v. Superior Court* (*Romero*) (1996) 13 Cal.4th 497. Thereafter, the court sentenced defendant as follows: on count 1, 12 years (the upper term of 6 years, doubled for the strike prior).[4] The court also ordered defendant to pay victim restitution in the amount of $138,000. It ordered joint and several liability for the victim restitution amount with codefendant Clinton Bauman (§ 1202.4, subd. (f)).[5] The court further ordered defendant to pay a $3,600 restitution fine (§ 1202.4, subd. (b)).

## FACTUAL BACKGROUND

Tewolde Berhane owns a construction company. In about June 2020, Berhane hired Bauman to work for his company. Bauman told Berhane after he was hired that he served a prior prison sentence. Bauman had a history of burglary and thefts of safes. Nonetheless, Berhane continued to employ Bauman because he trusted him and he needed the work. After he started working for Berhane, Bauman helped him remodel a bathroom in his home.

In about February 2021, Berhane had a locked safe in the upstairs of his home. The safe contained about $85,000 in cash, as well as silver coins, a pistol, four "expensive" watches and personal documents. He also had a five-gallon glass jug full of coins upstairs.

On February 26, 2021, at about 10:00 a.m., Bauman unexpectedly knocked on Berhane's door. Bauman appeared "taken aback" when Berhane answered. It was unusual for Berhane to be home at that time. On that morning, Berhane was home because he was recovering from receiving a vaccination. When Berhane asked why he

---

[4]    We note the trial court erroneously stated that "[c]ount 2 [is a section] 654." The amended information deleted the second felony charge against defendant. Thus, the first amended information alleged a single count. The probation report stated that only one count was alleged against defendant.

[5]    Bauman is not a party to this appeal.

was there, Bauman said he was "looking for a trim." Berhane became agitated and told Bauman that if he needed a "trim" he needed to go to the construction "yard." Bauman walked away. Later that day, at about 1:30 p.m., Berhane left his home to attend a meeting.

Earlier that day, defendant was leaving his place of residence in a green truck and asked a neighbor, Tyler Townsend, who was outside, whether he could help him "move something." After Townsend agreed, defendant told him that they were going to "Columbia" to take a safe out of a house while the owner was away. Townsend told defendant that he "did[ not] want anything to do with it."

Sometime after 1:30 p.m. on February 26, defendant entered Berhane's home and took his safe and glass jug full of coins. At about 5:00 p.m., Berhane came home and noticed the safe was missing. That evening, Bauman borrowed a metal cutting blade, called a Sawzall, from Berhane's foreman.

On March 4, 2021, defendant purchased a limited edition, "expensive" motorcycle with "a little over" $48,000 in cash. The police found Berhane's safe in a storage unit that contained photo albums, clothing, and paperwork belonging to defendant. The bottom of the safe was cut with a Sawzall and the contents were missing.

## DISCUSSION

### I. Senate Bill 567

Defendant contends we must vacate the sentence and remand the matter for resentencing because he did not properly admit, and the jury did not find true, that his prior crimes were "numerous or of increasing seriousness" under rule 4.421(b)(2) or that he served a prior prison term (rule 4.421(b)(3)), nor was the error harmless under *People v. Lynch* (2024) 16 Cal.5th 730 (*Lynch*) because the record is unclear as to whether the trial court would have still imposed the upper term without the improperly proved aggravating factors. The People concede two factors in aggravation were not properly admitted or proved under section 1170, subdivision (b) or *Erlinger v. United States*

(2024) 602 U.S. 821 (*Erlinger*) but argue any error in imposition of the upper term is harmless beyond a reasonable doubt.

We agree with the parties that these two circumstances in aggravation were not proved in compliance with section 1170, subdivision (b). We conclude that the evidence presented in support of the circumstances in aggravation does not permit us to conclude beyond a reasonable doubt that a jury would have found the facts underlying each circumstance in aggravation true.

## A. Additional Background

Before trial, the trial court advised defendant of his right to a jury trial as to the truth of his prior serious felony conviction. Defendant waived a jury trial and admitted he suffered a prior strike conviction.

Thereafter, the parties turned to two aggravating sentencing factors under rule 4.421(b)(2), defendant's convictions are numerous or of increasing seriousness and rule 4.421 (b)(3), defendant served a prior prison term. The trial court only advised defendant that he had the right to a court trial on those aggravating factors. Defendant waived his right to a court trial and admitted the truth of rule 4.421(b)(2) and (b)(3).

Prior to sentencing, defense counsel filed a *Romero* motion. Therein, defendant admitted that his RAP sheet showed a "plethora of [prior] convictions," four pending criminal cases before the court, and service of a prior prison term.

At the sentencing hearing, on January 4, 2024, defendant's counsel argued extensively that defendant's prior strike should be stricken. After hearing defense counsel's argument, the trial court said:

> "It[ is] true that the prior strike is old, but … the real question is … what did [defendant] learn from that prior strike conviction? And it appears nothing. He has had numerous prison sentences since that, poor performance on probation … everything is negative. [¶] … [¶]
>
> "[Defendant] was on [postrelease] community supervision at the time of the crime. He[ has] a lengthy criminal history, eight state prison

6.

sentences, if I counted correctly.…  I do[ not] see any basis for granting a [*Romero*] motion.…  I[ am] going to deny the motion on the basis that there[ are] no valid grounds to grant the motion."

There was no objection by either party after the trial court discussed defendant's criminal history.  The court then imposed the upper term:

"[T]he [c]ourt agrees with the probation report, recommendation of the aggravated term as the appropriate term.  The [c]ourt's finding is based on the jury's finding of aggravating circumstances, including that [the] items were of great value, [defendant] induced others to participate; the manner in which the crime was carried out indicated planning, sophistication, and professionalism, which are things that the jury found true in their verdict.

"And the defendant also admitted [rule 4.421](b)(2) and (b)(3) items, numerous and increasing seriousness of convictions and the prior prison sentence.  And based on those factors the [c]ourt is going to impose the aggravated term."

The trial court did not find any factors in mitigation, nor were any listed in the probation report.  On that record, the court imposed the upper term on count 1.

## B.  Compliance with Section 1170, Subdivision (b)

Effective January 1, 2022, section 1170, subdivision (b) was amended by Senate Bill 567 to prohibit imposition of an upper term sentence unless aggravating circumstances justify imposition of the upper term and the facts underlying those circumstances, other than a prior conviction, have been stipulated to by the defendant or have been found true beyond a reasonable doubt at trial by the jury or by the judge in a court trial.  (§ 1170, subd. (b)(2); Stats. 2021, ch. 731, § 1.3.)  Prior convictions may be tried solely by the court and proven by certified records of conviction.  (§ 1170, subd. (b)(3); see *Erlinger*, *supra*, 602 U.S. at p. 838 ["[A] judge may 'do no more, consistent with the Sixth Amendment, than determine what crime, with what elements, the defendant was convicted of.' "].)

In this case, the jury found three aggravating circumstances true, defendant induced others to participate in the commission of the crime (rule 4.421(a)(4)), the

7.

manner in which the crime was carried out indicates planning, sophistication, or professionalism (rule 4.421(a)(8)), and the crime involved a taking or damage of great monetary value (rule 4.421(a)(9)).  As a result, the parties agree, as do we, that three aggravating factors were properly proven to justify imposition of the upper term.

At issue here are the two remaining aggravating factors.[6]  While defendant admitted his convictions were numerous or of increasing seriousness (rule 4.421(b)(2)) and he served a prior prison term (rule 4.421(b)(3)), defendant was not advised of his right to a jury trial before his admission.  (See *People v. Lloyd* (2015) 236 Cal.App.4th 49, 59–60 [holding that a defendant should receive and expressly waive standard advisements, such as the right to a trial, to remain silent, and to confront adverse witnesses prior to admitting a prior conviction].)  The parties agree that defendant's admission to the 4.421(b)(2) and (b)(3) factors was invalid.  The parties further agree that under *Erlinger*, each aggravating factor must have been found true by a jury beyond a reasonable doubt, and a trial court may not rely on a certified record of conviction to prove that defendant's convictions are numerous or of increasing seriousness or that he served a prior prison term.  (*Erlinger*, *supra*, 602 U.S. at pp. 835–838.)[7]

Thus, two aggravating factors were not found in compliance with section 1170, subdivision (b).  Even so, the trial court imposed the upper term on count 1.  Unless imposition of the upper term on count 1 was harmless, the sentence must be vacated and the matter remanded to the court for resentencing.

---

[6]    We note defendant initially argues that one aggravating factor under rule 4.421(b)(2), defendant's convictions are numerous or of increasing seriousness, was not properly found.  The People concede that two aggravating factors under rule 4.421(b)(2) and (b)(3) were not properly proved under *Erlinger*.  In his reply, defendant agrees that the two aggravating factors were not admitted or proved in conformity with the Sixth Amendment.  We will address both aggravating factors.

[7]    We need not weigh in on this issue to resolve this case.  The issue is currently pending before our Supreme Court in *People v. Wiley*, review granted March 12, 2024, S283326, so weighing in on the issue would serve no broader purpose.

### C. Harmless Error

#### 1. Appropriate Standard

In *Lynch*, *supra*, 16 Cal.5th 730, our Supreme Court held that where a trial court applied a former version of section 1170, subdivision (b), and relied on facts not proved in compliance with section 1170, subdivision (b) to impose the upper term, the sentence must be vacated and the matter remanded unless we conclude beyond a reasonable doubt that the jury would necessarily have found the facts underlying all circumstances in aggravation relied upon by the trial court true beyond a reasonable doubt. (*Id*. at pp. 742–743, 761.) "In making this determination, we may ' "examine[] what the jury *necessarily* did find and ask[] whether it would be impossible, on the evidence, for the jury to find *that* without *also* finding the missing fact as well." [Citation.] …' We may also find the omission harmless if we can conclude beyond a reasonable doubt 'that the omitted [fact] was uncontested and supported by overwhelming evidence.' " (*Id*. at p. 775.)

The Supreme Court concluded, and the parties here agree, the *Chapman v. California* (1967) 386 U.S. 18 standard of review applies when there are aggravating factors relied on by the trial court that were not properly proved under section 1170, subdivision (b), even if some other aggravating factors relied on by the trial court were correctly established. (*Lynch*, *supra*, 16 Cal.5th at p. 768.) Therefore, "[t]he violation is prejudicial unless an appellate court can conclude beyond a reasonable doubt that a jury would have found true *all* of the aggravating facts relied upon by the trial court to justify an upper term sentence, or that those facts were otherwise proved true in compliance with the current statutory requirements." (*Ibid*., italics added.)

Further, because Senate Bill 567 "altered the scope of the trial court's discretion," for sentences imposed under the former version of section 1170, subdivision (b), our high court held that "the record must clearly indicate that the court would have found an upper term justified had it been aware of its more limited discretion." (*Lynch*, *supra*, 16

Cal.5th at pp. 743, 773 [at the time the defendant was sentenced, former section 1170, subdivision (b) gave a sentencing court broad discretion to select among three terms and impose a sentence that in its judgment served the interests of justice; however, the current statute as amended narrows that authority by creating a presumption against the upper term].) However, here, the amendment to section 1170, subdivision (b) did not alter the court's sentencing discretion. Rather, defendant was sentenced two years after Senate Bill 567 and the amendment to section 1170, subdivision (b) went into effect.

We are not convinced application of the "clearly indicates" portion of the analysis set forth in *Lynch* applies to the case before us.[8] (*Lynch*, *supra*, 16 Cal.5th at pp. 771–774.) A clear indication of how the trial court would exercise its discretion is necessary to find harmless error when the court did not understand its discretion, or the nature of the discretionary choice has changed since the court's exercise of discretion, such as in *Lynch*. However, if the court has exercised its discretion, but merely relied on erroneous considerations, the reviewing court asks whether there is a reasonable probability the sentence would have been more favorable to defendant if the trial court had not relied on the erroneous considerations. (*Id*. at p. 760, fn. 14 [" 'When a trial court has given both proper and improper reasons for a sentence choice, a reviewing court will set aside the sentence only if it is reasonably probable that the trial court would have chosen a lesser sentence had it known that some of its reasons were improper' "].) Put differently, "[w]hen a trial court has abused its discretion in choosing among available sentencing options, such as by relying on an improper sentencing factor, a reviewing court must still

_____

**8**    We note the parties do not weigh in on this part of the analysis. While defendant argues the error was not harmless, and the People argue the error was harmless, both parties fail to consider the second part of the analysis, which is either whether the record "clearly indicates" the trial court would have imposed the upper term if it had been aware of its discretion, or whether there is a reasonable probability the sentence would have been more favorable to defendant had the court not relied on the erroneous considerations.

10.

affirm unless 'the error complained of has resulted in a miscarriage of justice.' " (*People v. McDaniels* (2018) 22 Cal.App.5th 420, 426; Cal. Const., art. VI, § 13.) "In these situations, the trial court has revealed which sentencing choice it prefers, and the reviewing court must decide whether there is a reasonable probability that the trial court's lawful exercise of discretion on remand will lead it to make a different choice." (*McDaniels*, at p. 426.)

In our case, because the trial court imposed defendant's sentence after the amendments to Senate Bill 567 went into effect, we presume the court knew the law and understood the scope of its discretion, absent evidence to the contrary. For this reason, we apply the "reasonable probability" test—whether it is reasonably probable the sentence would have been more favorable to defendant had the court not relied on the factors not properly proved by a jury.

### 2. Analysis

The People contend the error was harmless because the factors were provable to a jury beyond a reasonable doubt, citing to defendant's *Romero* motion and the probation report as evidence. Defendant contends the error was not harmless because it cannot be reasonably ruled out that the trial court would have imposed the upper term based only on the properly proved factors, and the court's sentencing statement did not provide any indication that it would not impose a lesser sentence under any circumstances. We agree with defendant.

Turning to the aggravating circumstances erroneously relied upon by the trial court, we first consider whether we can conclude the two aggravating factors would have been found true by the jury beyond a reasonable doubt, which are: defendant's crimes are numerous or of increasing seriousness and defendant served a prior prison term. (*Lynch*, *supra*, 16 Cal.5th at pp. 742–743, 761.)

The probation officer's report would not have been admissible to prove any of the circumstances in aggravation. (See *People v. Reed* (1996) 13 Cal.4th 217, 230 [the

11.

Supreme Court concluded a probation officer's summary of the circumstances surrounding the crime contained in a probation report was inadmissible]; see *Erlinger*, *supra*, 602 U.S. at pp. 841–842 [judicial records often contain "old recorded details, prone to error, sometimes untested, often inessential, and the consequences of which a defendant may not have appreciated at the time, [which] 'should not come back to haunt [him] many years down the road' "].)  We acknowledge defendant's probation report details defendant's prior record, listing numerous criminal convictions, prison sentences, and violations of parole.  His criminal history was also detailed in his *Romero* motion and recognized by the trial court without objection at the time of sentencing.  However, defendant's certified record of conviction or RAP sheet was never admitted into evidence.[9]  Since the documents relied upon by the court regarding defendant's prior criminal history are not evidence, we may not find harmlessness on this record as to the aggravating factor, defendant's crimes are numerous or of increasing seriousness.

Moreover, the probation report sheds no light on how the jury would have viewed the more subjective consideration of whether defendant's crimes were "numerous or of increasing seriousness." (Rule 4.421(b)(2).)  " ' "[T]o the extent a potential aggravating circumstance at issue in a particular case rests on a somewhat vague or subjective standard, it may be difficult for a reviewing court to conclude with confidence that, had the issue been submitted to the jury, the jury would have assessed the facts in the same manner as did the trial court." [Citation.]  …  "Many of the aggravating circumstances described in the rules require an imprecise quantitative or comparative evaluation of the facts," ' with the victim's particular vulnerability being one example." (*Lynch*, *supra*, 16 Cal.5th at pp. 775–776.)  This is the case here.  Whether defendant's crimes are

---

[9]     We filed an order to augment the record on January 14, 2025, and requested defendant's certified record of conviction, RAP sheet, or any other documents relied upon by the trial court in making its findings when sentencing defendant.  The court said that there was no certified record of conviction or RAP sheet in the court's file.

"numerous or of increasing seriousness" requires a similar imprecise evaluation of the facts. [10]

The People argue defendant acknowledged he suffered numerous convictions in his *Romero* motion so the jury would have found it true. However, defendant only properly admitted a single prior serious felony. This is not enough. (*People v. Searle* (1989) 213 Cal.App.3d 1091, 1098 [three prior convictions are numerous].) For those reasons, we cannot conclude beyond a reasonable doubt that the jury would have found defendant's prior convictions numerous or of increasing seriousness.

We reach a different conclusion as to the aggravating factor of defendant's prior prison term. As previously said, defendant waived his right to a jury trial and admitted he was convicted of a prior strike, a serious felony. Defendant's voluntary admission to suffering a prior serious felony showed the fact that he served a prior prison term was " 'uncontested and supported by overwhelming evidence.' " (*Lynch*, *supra*, 16 Cal.5th at p. 775.) Thus, it is reasonably probable a jury would have found beyond a reasonable doubt that defendant served a prior prison term.

In sum, the parties agree that the first three aggravating circumstances were properly found true by the jury. As to the fourth aggravating factor, we conclude there is a reasonable probability the jury would not have found true beyond a reasonable doubt that defendant's crimes are numerous or of increasing seriousness. We further find there is no reasonable probability the jury would not have found true beyond a reasonable doubt that defendant suffered a prior prison term.

Finally, we must determine whether there is a reasonable probability the trial court would have sentenced defendant to a sentence less than the upper term if it did not consider the unproved factor for which the omission of proof was not harmless. In

---

[10] We note the trial court also said at the time of sentencing that defendant "has had numerous prison sentences" and a "lengthy criminal history .…" There is nothing in the record suggesting the seriousness of defendant's crimes.

*Lynch*, the court sentenced defendant before the effective date of Senate Bill 567. Our Supreme Court noted, " 'when the applicable law governing the defendant's sentence has substantively changed after sentencing, it is almost always speculative for a reviewing court to say what the sentencing court would have done if it had known the scope of its discretionary powers at the time of sentencing.' " (*Lynch*, *supra*, 16 Cal.5th at p. 776.) Unlike *Lynch*, in our case Senate Bill 567 became operative two years before the court sentenced defendant. There is no indication the court did not know the law or understand its discretion under Senate Bill 567.

At the time of sentencing, the trial court mentioned only aggravating factors; there is no evidence of any mitigating circumstances in the record. Four of the five aggravating factors relied upon by the court in imposing the upper term were proved in compliance with section 1170, subdivision (b) or provable on the record before us to the jury beyond a reasonable doubt. However, the court failed to comment or give any statement showing that it would still have sentenced defendant to the upper term despite the improper factor. The court offered no comments regarding whether it would have selected an upper term sentence even if only a single aggravating factor or some subset of permissible facts were present. The court also did not comment on the seriousness of the crime, nor did it say the crime was particularly egregious. The court failed to indicate it would impose nothing less than the upper term under any circumstance. Further difficulty lies in the point that the court relied on a long list of aggravating factors, all of which the court included when selecting the upper term.

Because we cannot find the omission of a jury trial harmless beyond a reasonable doubt as to every aggravating factor relied upon by the trial court to impose the upper term, and because there is a reasonable probability the court would have imposed a lesser term if it did not consider the unproved factor, especially since the court relied on a long list of aggravating factors in selecting the upper term, remand is required.

**II. Trial Court's Imposition of a Restitution Fine Without
First Determining Defendant Had the Ability to Pay**

Defendant argues the trial court violated his right to due process because it imposed a $3,600 restitution fine without determining defendant's ability to pay, citing *People v. Dueñas* (2019) 30 Cal.App.5th 1157. Assuming the issue is forfeited, defendant argues his counsel was prejudicially ineffective for failing to object to the imposition of the restitution fine absent a determination of defendant's ability to pay. The People respond defendant forfeited his claim, *Dueñas* was wrongly decided, and his counsel was not ineffective for failing to object. We conclude defendant forfeited his claim that he was entitled to an ability to pay hearing because he did not object or request one at sentencing, and his counsel was not ineffective for failing to object to the court's failure to hold such hearing.

**A. Additional Background**

At defendant's sentencing hearing prior to imposing sentence, the trial court stated: "Pursuant to … [s]ection 1202.4[, subdivision] (b), a restitution fine of $3,600 will be imposed and collected under the provisions of … [s]ection 2085.5 .…"

At no time did defense counsel object to the imposition of the restitution fine.

**B. Forfeiture**

In *People v. Dueñas*, *supra*, 30 Cal.App.5th at p. 1168, the Second District held it was "fundamentally unfair" and violated due process under the federal and California Constitutions to impose court operations and court facilities assessments without a determination of the defendant's ability to pay. The court also found that execution of a restitution fine under section 1202.4 "must be stayed unless and until the trial court holds an ability to pay hearing and concludes that the defendant has the present ability to pay the restitution fine." (*Id*. at p. 1164.) However, a defendant's failure to request an ability to pay hearing at the sentencing hearing after *Dueñas* was decided forfeits the issue on appeal. (See *People v. Greeley* (2021) 70 Cal.App.5th 609, 624.)

The People argue defendant forfeited his claim of error because *Dueñas* was decided five years before defendant was sentenced. We agree. "Ordinarily, a criminal defendant who does not challenge an assertedly erroneous ruling of the trial court in that court has forfeited his or her right to raise the claim on appeal." (*In re Sheena K*. (2007) 40 Cal.4th 875, 880.) This rule applies to alleged sentencing errors, including the imposition of fines, fees, and assessments. (*People v. Trujillo* (2015) 60 Cal.4th 850, 856–857; *People v. Gamache* (2010) 48 Cal.4th 347, 409.) At the time of defendant's sentencing hearing, on January 4, 2024, *Dueñas* had been long decided. There is no reason why defendant could not have requested a hearing regarding his ability to pay the restitution fine at the time of sentencing. Defendant's claim is forfeited.

## C. Ineffective Assistance of Counsel

We also reject defendant's attempt to avoid forfeiture by claiming ineffective of assistance for defense counsel's failure to object to the $3,600 restitution fine imposed by the trial court. The burden of proving an ineffective assistance of counsel claim is on defendant. (*People v. Pope* (1979) 23 Cal.3d 412, 425, overruled on another ground in *People v. Delgado* (2017) 2 Cal.5th 544.) To prevail on an ineffective assistance of counsel claim, defendant must establish both deficient performance and prejudice, that is, "a 'reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.' " (*People v. Ledesma* (2006) 39 Cal.4th 641, 745–746.) Tactical errors are generally not deemed reversible, and counsel's decisions are evaluated in the context of the record. (*Strickland v. Washington* (1984) 466 U.S. 668, 689.) If the record on appeal is silent regarding why counsel acted or failed to act in the manner challenged, the case will be affirmed on appeal "unless counsel was asked for an explanation and failed to provide one, or unless there simply could be no satisfactory explanation …." (*Pope*, at p. 426.)

Defendant has not met his burden to demonstrate either that his trial counsel's performance was deficient, or that there is a reasonable probability that, but for counsel's

16.

failure to object to defendant's restitution fine, the result would have been different. Here, the record on appeal does not illuminate the reason why defense counsel failed to object to the imposition of defendant's restitution fine absent an ability to pay determination, and counsel was not asked to provide an explanation.

We cannot say there is no satisfactory explanation for defense counsel's failure to object or request that the trial court consider defendant's ability to pay. Counsel could have reasonably concluded that an ability to pay hearing would not have altered the court's decisionmaking with respect to the fines and fees imposed. While the record is not developed regarding defendant's assets and sources of income, it also does not establish defendant's inability to pay. Trial counsel may have chosen not to raise the issue because he had reason to believe defendant had the ability to pay. (See, e.g., *People v. Ramirez* (2023) 98 Cal.App.5th 175, 226 ["Here, the record does not affirmatively demonstrate [the] defendant's trial counsel had no rational tactical purpose for failing to object to the imposition of the challenged fines and fees. Defense counsel may have had access to information about [the] defendant's financial status, including the possibility of his earnings while in prison, that would make such an objection unsuccessful."].) A finding of ability to pay a restitution fine may be based on the wages a defendant will earn in prison. (*People v. Gentry* (1994) 28 Cal.App.4th 1374, 1376–1377 [holding that in making an ability to pay determination the court may consider a defendant's future prison wages in their entirety as well as the possibility of employment upon the defendant's release from prison].) And, for purposes of appointed counsel, a finding of indigency does not, by itself, establish an inability to pay the restitution fine. (See *People v. Douglas* (1995) 39 Cal.App.4th 1385, 1397 [noting a defendant may lack ability to pay costs of court-appointed counsel yet have ability to pay a restitution fine].)

Moreover, there is evidence that defendant worked as a landscaper[11] at the time he committed the crime. He was employed at "USFS" for three years, showing that he has at least some employment experience. He has a high school diploma. While these factors do not show defendant was affluent, there is at least some indication defendant is not faced with an inescapable financial burden, thus, there is no reasonable probability that, but for counsel's failure to request an ability to pay hearing, the trial court would have imposed fines and fees in a lesser amount. (See *People v. Johnson* (2019) 35 Cal.App.5th 134, 139–140 [any error in imposing fines and fees without an ability to pay hearing was harmless because record showed that the defendant had some financial means and past income-earning capacity, as well as an ability to earn prison wages].)

### III. Victim Restitution Order

The parties agree, as do we, that the victim restitution order contains a clerical error regarding defendant's joint and several liability with Bauman that should be corrected. We may correct a clerical error in recording the judgment at any time, and do so here. (See *People v. Mitchell* (2001) 26 Cal.4th 181, 185.)

The trial court ordered joint and several liability of the restitution order to the victim in the amount of $138,000 between defendant and codefendant Bauman. However, the victim restitution order fails to state that Bauman is jointly and severally liable for the restitution payment under No. 1, subsection (d). We therefore direct the trial court to amend the victim restitution order, reflecting defendant and Bauman jointly and severally liable for restitution in the amount of $138,000 under section 2085.5.[12]

---

[11] The probation report refers to defendant's employment as a landscaper by calling it a "yard clean-up business."

[12] We agree with the People that a hearing was conducted regarding the order to pay restitution. (*People v. Dehle* (2008) 166 Cal.App.4th 1380, 1386 [restitution hearings are sentencing hearings].) The victim restitution order therefore accurately reflects the restitution amount imposed after a hearing on the matter. Defendant cites *People v. Zackery* (2007) 147 Cal.App.4th 380, 389 for the proposition that a hearing was not held. However, *Zackery* held restitution fines cannot be added to the judgment after the

**DISPOSITION**

Defendant's sentence is vacated and the matter is remanded for full resentencing in conformity with section 1170, subdivision (b). The People may elect to retry the aggravating factors on remand or proceed with resentencing on only the properly found aggravating factors. The trial court is directed to issue an amended victim restitution order that correctly reflects the oral pronouncement of judgment. The judgment is otherwise affirmed.

---

sentencing hearing and outside of the defendant's presence. (*Ibid.*) Here, defendant's restitution order was imposed in his presence at the time of sentencing. In his reply, defendant does not further challenge or comment upon the issue of whether a hearing was conducted. Thus, the trial court should only modify the victim restitution order indicating joint and several liability with Bauman.